# Stephen G. Poulin v. Ford Motor Company and Hayes Ford, Inc.

[513 A.2d 1168]

No. 83-287

Present: **Hill, Peck, Gibson and Hayes, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed May 16, 1986

*Gregory P. Howe*, Newport, and *Michael Rose* (On the Brief), St. Albans, for Plaintiff-Appellee.

*Ritchie E. Berger* of *Dinse, Allen & Erdmann*, Burlington, for Defendants-Appellants.

**Peck, J.** The plaintiff brought an action against defendants Hayes Ford and Ford Motor Company, alleging that they illegally induced him to buy a 1979 Ford Mustang "Pace Car" by indicating that the car was a limited-production model which would increase in value. The complaint alleged violations of express and implied warranties, intentional misrepresentation and violation of the Consumer Fraud Act, 9 V.S.A. § 2453. After trial, the jury awarded the plaintiff $40,000. Defendants appeal the judgment on the verdict, the denial of a motion for a new trial, and the denial of a motion to set aside the verdict. We affirm.

In May, 1979, plaintiff, an owner of a lumber business, approached John Hayes, owner of defendant Hayes Ford, Inc., and expressed some interest in purchasing a 1979 Ford Mustang "Pace Car." The car was an exact replica of the one used to pace the field at the 1979 Indianapolis 500 motor car race. The plaintiff's interest stemmed from his knowledge that the 1978 Corvette Pace Car had increased in value, according to the evidence, from $14,000 to approximately $28,000.

After a test drive, the plaintiff met with Hayes and a representative of defendant Ford Motor Company. He expressed a contin-

uing interest in the vehicle but also indicated that personal financial difficulties might preclude the purchase. According to the plaintiff, the representative of defendant Ford Motor Company told plaintiff that the pace car is "going to be a very lucrative type of car . . . as a collector's item . . . [W]e are stopping production as of the Indianapolis 500." Further, testimony indicated that the defendants told plaintiff the 1979 pace car was a limited edition with only about 2,800 issued, or less than one car per dealer. Defendants told plaintiff the car would increase in value similarly to the Corvette version of the pace car. Based on these representations, plaintiff purchased the car.

About one month later, plaintiff contacted Hayes and expressed his concerns about seeing "quite a few" pace cars on the road. Defendant Hayes Ford indicated to plaintiff that Ford had "flooded the market" with the cars, that Ford was still producing them and that Hayes Ford had, in fact, acquired another pace car. Plaintiff also learned that a Ford dealer in Swanton, Vermont, was offering rebates on two of the cars, asking only $7,400 for each.

After failing in his attempts to get Hayes Ford to buy back the pace car, plaintiff brought an action against the named defendants. The counts specified that: (1) defendants breached an express warranty that the vehicle was a "limited production car"; (2) defendants breached an implied warranty of fitness for a particular purpose in that defendants knew plaintiff, in purchasing the car, relied upon statements regarding its expected increase in value and that the warranted increase never occurred; (3) defendants defrauded plaintiff; and (4) defendants' actions constituted unfair and deceptive acts and practices in violation of 9 V.S.A. § 2453.

After both sides presented their cases, the trial judge, over defendants' objection, charged the jury on plaintiff's consumer fraud claim as well as the other claims. The jury found defendants liable, and awarded him $40,000. The amount of this award indicates the jury's verdict was rendered pursuant to the exemplary damage provision in the Consumer Fraud Act. 9 V.S.A. § 2461(b). Defendants moved the court to grant a new trial and to set aside the verdict. The court denied defendants' motions and

issued judgment for plaintiff. Defendants appealed the order denying their motions and appealed the judgment.[1]

■ The defendants first argue that the trial court committed reversible error in submitting the consumer fraud count to the jury. They contend (1) that the plaintiff was not a consumer, and (2) that there was insufficient evidence of consumer fraud presented at trial. In reviewing the denial of a directed verdict motion, this Court "must view the evidence in the light most favorable to the nonmoving party, excluding any modifying evidence." *Senesac* v. *Associates in Obstetrics & Gynecology*, 141 Vt. 310, 312, 449 A.2d 900, 902 (1982).

■ The Consumer Fraud Act prohibits "unfair or deceptive acts or practices in commerce." 9 V.S.A. § 2453(a). For the Act to apply, the plaintiff must be a consumer as defined by the Act: "any person who purchases . . . merchandise or services not for resale in the ordinary course of his trade or business but for his use or benefit . . . ."[2] 9 V.S.A. § 2451a. Defendants argue that plaintiff was not a consumer because he purchased the pace car as an investment, and because he stated he bought and sold cars. Plaintiff's expectation that the car would appreciate in value does not prohibit him from being a consumer. The issue is whether the plaintiff bought the car to resell in the ordinary course of his business. The plaintiff testified that he bought the car for his personal benefit and that although he had sold cars bought as investments, he was not a used car dealer. Based on this testimony, the jury could conclude that the plaintiff was a consumer under the Act.

The defendants' next argument is that there was insufficient evidence presented at trial to allow the claim of unfair or deceptive acts or practices to go to the jury. Although this Court has considered what constitutes unfair acts and practices, *Christie* v. *Dalmig, Inc.*, 136 Vt. 597, 600-01, 396 A.2d 1385, 1387-88 (1979), we have not addressed what constitutes deceptive acts or practices under 9 V.S.A. § 2453(a).

In this case, the trial court charged the jury on common law fraud,[3] apparently concluding that it was synonymous with con-

---

[1] The law firm which represented the defendants before this Court on appeal did not act as trial counsel in superior court. The firm was retained for purposes of the appeal following the jury verdict.

[2] 9 V.S.A. § 2451a was amended in 1985.

[3] The charge read as follows:

sumer fraud. However, state statutes similar to our Consumer Fraud Act are recognized as providing a much broader right than common law fraud. See *Dunlap* v. *Jimmy GMC of Tuscon, Inc.*, 136 Ariz. 338, 343-44, 666 P.2d 83, 89 (1983); *Heller* v. *Silverbranch Construction Corp.*, 376 Mass. 621, 626, 382 N.E.2d 1065, 1069-70 (1978).

■ Our Consumer Fraud Act requires courts construing Vermont's consumer fraud law to "be guided by the construction of similar terms contained in section 5(a)(1) of the Federal Trade Commission Act as from time to time amended by the Federal Trade Commission and the courts of the United States." 9 V.S.A. § 2453(b).

Many federal courts have held that a misrepresentation which has the tendency and capacity to mislead consumers is a deceptive act or practice under federal law. See, e.g., *American Home Products Corp.* v. *FTC*, 695 F.2d 681, 686 (3d Cir. 1982); *Trans World Accounts, Inc.* v. *FTC*, 594 F.2d 212, 214 (9th Cir. 1979); *FTC* v. *Sterling Drug, Inc.*, 317 F.2d 669, 674 (2d Cir. 1963); see also the discussion in *FTC* v. *Colgate-Palmolive Co.*, 380 U.S. 374, 384-90 (1965). Similarly, a number of courts in states with statutes similar to Vermont's Consumer Fraud Act have also adopted this definition of deception. See, e.g., *Williams* v. *Bruno Appliance & Furniture Mart, Inc.*, 62 Ill. App. 3d 219, 222, 379 N.E.2d 52, 54 (1978); *Spradling* v. *Williams*, 566 S.W.2d 561, 562-63 (Tex. 1978) (citation omitted); see also Leafter & Lipson, *Consumer Actions Against Unfair or Deceptive Acts or Practices: The Private Uses of Federal Trade Commission Jurisprudence*, 48 Geo. Wash. L. Rev. 521, 535-36 (1980).

Recently, the Federal Trade Commission (FTC) stated that "a deception case requires a showing of three elements: (1) there must be a representation, practice, or omission likely to mislead consumers; (2) the consumers must be interpreting the message

---

The following essential elements of fraudulent misrepresentation are that prior to the sale of the pace car Defendants misrepresented to Plaintiff the number of cars that would be manufactured; that this misrepresentation was either intentional—that is, Defendants made it knowing that it was untrue or that Defendants acted as if they knew what they said was a fact when they really did not know them to be true; misrepresentation was a material factor in inducing the Plaintiff to purchase the pace car; the Plaintiff reasonably relied on the misrepresentation and was deceived by it; and finally the misrepresentation was the proximate cause of the damages to Plaintiff.

reasonably under the circumstances; and (3) the misleading effects must be 'material,' that is, likely to affect consumers' conduct or decision with regard to a product." *International Harvester Co.*, 3 Trade Reg. Rep. (CCH) ¶ 22,217 p. 23,174, 23,178 (Dec. 21, 1984).

It is unnecessary to determine which standard should be adopted for purposes of this case under our Act, because in light of the facts presented here, both standards are satisfied. The evidence indicated that the defendants told the plaintiff the pace car was a limited edition; that production was stopping immediately; that only 2,800 cars would be produced; and that the car would increase in value by $4,000 or $5,000 in several months. Furthermore, there was evidence that one defendant later told the plaintiff that Ford had flooded the market with the cars and that Ford was still producing them. Other evidence revealed that at least one dealer was offering $1,600 rebates on the cars and that the price of the car had dropped from $9,000 to between $5,000 and $7,500. Given this evidence, we conclude that there was sufficient evidence of deceptive acts or practices to go to the jury. Because we find sufficient support for a finding of deception, we do not consider whether the acts were unfair.

The defendants further attack the trial court's charge on consumer fraud as erroneous because (1) it failed to describe what constitutes unfair or deceptive acts or practices, and (2) it directed the jury to apply the preponderance-of-the-evidence standard of proof rather than that of clear and convincing evidence. See *Hughes* v. *Holt*, 140 Vt. 38, 41, 435 A.2d 687, 689 (1981). The record reveals no objection by the defendants as to the burden of proof or the text of the instructions themselves. Issues not objected to below will not be considered upon appellate review. *Collette* v. *Bousley*, 141 Vt. 373, 374, 449 A.2d 936, 937 (1982). Furthermore, as noted above, the jury charge required a higher standard than that of consumer fraud, thereby giving defendants a definite advantage of which they now complain. Their arguments have no merit. However, to clarify the issue of burden of proof we make the following comments. Defendants are correct that common law fraud requires clear and convincing proof. *Hughes, supra*, 140 Vt. at 41, 435 A.2d at 689. As defendants admit, however, the jury based its decision on consumer fraud. Consumer fraud does not require the higher standard of proof. "The mere fact that the word 'fraud' appears in the title of our con-

sumer protection statute does not give rise to an inference that the legislature intended to require a higher degree of proof than that ordinarily required in civil cases." *Dunlap, supra,* 136 Ariz. at 343, 666 P.2d at 89. The purpose of our Consumer Fraud Act is to protect consumers by adding "a claim for relief that is easier to establish than is common law fraud. To require the higher degree of proof would frustrate the legislative intent." *Id.* Until the legislature states otherwise, we will not presume that it intended to impose the greater burden of proof in consumer fraud cases.

Next, the defendants attack the verdict as unsupported by the evidence. They contend that deception requires an intentional misrepresentation, and that plaintiff failed to introduce any evidence that the defendants intentionally misrepresented material facts.[4] Neither the prevailing judicial definition nor the recent FTC definition (both mentioned above) require intent. See, e.g., *FTC* v. *Sterling Drug, Inc., supra,* 317 F.2d at 674; *State* v. *O'Neill Investigations, Inc.,* 609 P.2d 520, 535 (Alaska 1980); *International Harvester, supra,* 3 Trade Reg. Rep. (CCH) at 23,178. Thus, plaintiff was held to a higher standard than that required under the Act. Defendants' argument must fail.

■ Defendants also argue that plaintiff failed to show that there was a misrepresentation. They contend that the defendants' assertion that the pace car was a limited edition was never proven to be false because the plaintiff did not produce evidence on the number of pace cars actually produced by Ford. Viewing the evidence most favorably to the plaintiff and excluding any modifying evidence, we find that there was sufficient evidence to support a showing of misrepresentation: specifically, that Ford had flooded the market with the cars and that production had continued past the date they said it would stop.

■ Another error alleged by the defendants is that the trial court charged the jury that over 20,000 pace cars were made by Ford when no evidence was introduced at trial to that effect. The defendants did not object to the content of the instructions be-

---

[4] Defendants do not specifically raise the issue of whether the exemplary damages provision in 9 V.S.A. § 2461(a) requires intentional or willful conduct. As noted above, the jury charge did require intentional misrepresentation. We do not need to discuss the standard for an award of exemplary damages under 9 V.S.A. § 2461 because the issue was not addressed by the parties and the record does reveal evidence which reasonably supports the jury verdict. *Kinzer* v. *Degler Corp.,* 145 Vt. 410, 412-13, 491 A.2d 1017, 1019 (1985).

low, and therefore they are precluded from raising it on appeal. *Collette, supra,* 141 Vt. at 374, 449 A.2d at 937; *Sanville* v. *Williams,* 138 Vt. 498, 501, 418 A.2d 860, 862 (1980). Defendants argue, however, that this statement constitutes a "failure of justice" which requires reversal. See *Perkins* v. *Windsor Hospital Corp.,* 142 Vt. 305, 311, 455 A.2d 810, 814 (1982). We do not think that this statement, taken in context, rises to that level.

The court's jury instructions included this paragraph:

> Mr. Poulin is suing the Defendants for breach of express and implied warranty and consumer fraud arising out of the sale of a 1979 Ford Mustang pace car. He claims that the Defendants induced him to buy the pace car by telling him that only 2,800 were to be manufactured and it would become a valuable collector's item. However, over 20,000 pace cars were made, and Mr. Poulin claims that he suffered damages because of Defendants' misrepresentations.

We agree with appellee that the judge was just outlining the plaintiff's claims. Later in the charge the judge stated:

> Plaintiff claims that Defendants represented to him that the pace car was a limited edition model, and that the pace car was, in fact, not a limited edition. If you find that the Defendants did not so represent the pace car, or that the pace car in fact conformed to the representation, you must find that there was no breach of express warranty, and your verdict on this count must be for the Defendants.
>
> If you find that the representation was made, however, and that the pace car did not conform, you will find that Defendants breached an express warranty.

We do not think the mention of the 20,000 amounted to a failure of justice.

The plaintiff claims this appeal should be dismissed for lack of jurisdiction because the lower court's decision was not final due to its failure to rule on attorney's fees. Although the plaintiff requested attorney's fees in his complaint and in his proposed jury instructions, he did not introduce any evidence on reasonable attorney's fees at trial. After plaintiff rested, he moved to reopen to introduce evidence on this issue but the court denied his motion. He did not object to the court's jury instructions which did not mention attorney's fees. After trial, he did not cross-appeal or

move to amend the judgment. Under these circumstances, we think the judgment was final and the issue of attorney's fees has been waived.

*Affirmed.*