**22-282-cv**
*RSD Leasing, Inc. v. Navistar Int'l Corp.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

———————

August Term, 2022

Argued: June 28, 2023     Decided: August 30, 2023

Docket No. 22-282-cv

———————

RSD LEASING, INC.,

*Plaintiff-Appellant,*

— v. —

NAVISTAR INTERNATIONAL CORP., NAVISTAR, INC.,

*Defendants-Appellees.*

———————

Before:

LYNCH, LOHIER, and BIANCO, *Circuit Judges.*

———————

Plaintiff-Appellant RSD Leasing Inc., a company that leases and, eventually, resells trucks to other commercial entities, appeals from a decision by the District Court for the District of Vermont (Crawford, *Ch. J.*) granting in relevant part summary judgment to Defendants-Appellees Navistar International

Corp. and Navistar, Inc., the manufacturer of several allegedly substandard trucks in RSD's fleet. The sole question we are asked to resolve on appeal is whether, for purposes of its purchase of those trucks, RSD qualifies as a "consumer" under the Vermont Consumer Protection Act and therefore is eligible to invoke the Act's protections. In the absence of any on-point Vermont caselaw signaling whether the statute extends "consumer" protections to a business that purchases a good intending exclusively to lease that good to a third party and then to resell it at the end of the lease term, the district court relied in substantial part on two brief passages from the Act's legislative history, holding that RSD was not acting as a "consumer" when it purchased the trucks at issue. We are not so sure. Faced with a statutory text amenable to multiple plausible interpretations, and with little in the way of Vermont authority to guide us, we are unable to confidently predict how the Vermont Supreme Court would decide the matter. We therefore **CERTIFY** the question to that court.

---

MICHAEL F. HANLEY (Paul J. Perkins, *on the brief*), Plante & Hanley, P.C., White River Junction, VT, *for Plaintiff-Appellant*.

JEFFREY S. PATTERSON, Hartline Barger LLP, Dallas, TX (Angela S. Gordon, Jacob L. Ramsey, Luke C. Spencer, Hartline Barger LLP, Dallas, TX; Richard J. Windish, Doreen F. Connor, Primmer Piper Eggleston & Cramer PC, Woodstock, VT; *on the brief*), *for Defendants-Appellees.*

---

GERARD E. LYNCH, *Circuit Judge*:

Plaintiff-Appellant RSD Leasing Inc. ("RSD"), a company that leases trucks to other commercial entities intending to resell them at the end of the lease term,

appeals from a judgment of the District Court for the District of Vermont (Geoffrey W. Crawford, *Ch. J.*) granting summary judgment to Defendants-Appellees Navistar International Corp. and Navistar, Inc. (together, "Navistar"), the manufacturer of 40 trucks that RSD purchased for its fleet from a non-party dealer. Although RSD initially pled several claims, the parties have narrowed their dispute on appeal to a single claim under the Vermont Consumer Protection Act (the "VCPA" or the "Act").

In fact, only one aspect of that claim is before us: whether RSD qualifies as a "consumer" under the VCPA. The VCPA, which protects individuals and businesses alike so long as they satisfy the definition of "consumer," defines that key term in relevant part as "a person who purchases . . . goods or services not for resale in the ordinary course of the person's trade or business but for the use or benefit of the person's business or in connection with the operation of the person's business." 9 V.S.A. § 2451a(1). As an initial matter, several terms featured in that definition are not defined in the statute and are subject to multiple plausible and divergent interpretations. Likewise, the text of the statute does not illuminate whether a company that purchases a good intending *both* to, say, "use" it *and* to resell it immediately after that "use" qualifies as a

"consumer." And crucially, what little guidance there is from Vermont courts to help us determine which of several plausible, contrary statutory readings we should adopt does not directly address the interpretation of the statutory terms in sufficiently analogous contexts to clarify the issues before us. As a result, we are unable to confidently predict how the Vermont Supreme Court would resolve this dispute, and we therefore reserve decision and **CERTIFY** to that court the question set forth later in this opinion.

## BACKGROUND

### I.     Factual Background

#### A.     The Underlying Dispute

RSD leases, and eventually endeavors to sell, trucks to commercial operators. It is a subsidiary of RSD Transportation, Inc., a New Hampshire corporation based in Vermont. Navistar, a Delaware corporation based in Illinois, "designs, manufactures, distributes and sells commercial trucks" globally. App'x 10. Between 2008 and 2014, RSD purchased 40 Navistar-manufactured trucks (the "Subject Trucks") from a non-party dealer. Those trucks represented a significant share of RSD's fleet; as of June 2021, RSD owned around 50 trucks, which were

4

predominantly, though not exclusively, manufactured by Navistar.[1]

At the heart of this dispute is RSD's dissatisfaction with the proprietary exhaust gas recirculation technology installed in each of the Subject Trucks. According to RSD President Peter Daniels, Navistar "promised" that those trucks "would provide lower operating costs, less down time, optimal performance, increased power, improved combustion, premium reliability, cleanliness and energy-efficiency and higher residual value" than other trucks. *Id.* at 222. Instead, the exhaust gas recirculation technology caused the Subject Trucks to "lose power . . . , break down, overheat and damage other engine components." *Id.* at 224. But although that grievance is why this lawsuit exists, its merits are largely irrelevant for our purposes.

### B. RSD's Leasing and Resale Practices

Rather, this appeal centers on what precisely RSD intended to do with the trucks. It is undisputed that, as was its usual practice, RSD leased the Subject

---

[1] As of June 2021, RSD (but not its parent) was in the process of gradually "winding down" operations, App'x 130, and had no more than around five active lessees. The record does not illuminate precisely what purpose RSD's other trucks currently serve; at least some are leased internally to its parent company, while others have been placed in the company's short-term rental fleet.

Trucks out to other entities (primarily "trucking companies") for lease terms ranging from four to six years. App'x 128-29. Throughout the lease terms, RSD maintained some contact with each of the Subject Trucks: (1) it paid the loan for each truck; (2) it periodically renewed each truck's registration; (3) it paid for inspections; (4) it paid taxes, and claimed depreciation tax credits, on each truck; (5) it replaced broken-down trucks; (6) it retained responsibility for truck maintenance; and (7) it did not transfer title to the customer.

Each lease agreement included an option for the lessee to buy the truck at the end of the term. But only around half of the Subject Trucks were so conveyed. As for the other half, two remain in RSD's rental fleet "for occasional short-term, day-to-day or week at a time possibly, rental," *id.* at 142, and "the rest . . . are stored on [RSD's] premises and will be sold for parts or hauled to a junkyard," *id.* at 225. The company would have preferred to repurpose more of the remaining Subject Trucks into its rental fleet, but many proved "too unreliable." *Id.*

It is undisputed that RSD's intent at the time it purchased the Subject Trucks was – consistent with its usual practice – to lease them out and, after each lease expired, to offer them for resale. In his deposition on behalf of RSD, Daniels confirmed that the company typically looks to sell its trucks after each lease:

6

Q. . . . [A]t the end of the lease term does RSD re-lease the trucks or does it sell the trucks?

A. Well our goal is to sell. If we have a truck that comes in at reasonable mileage, we may put it in our rental fleet for a year or so to accumulate mileage.

Q. Okay. Let me understand that. . . . [I]f a truck comes in under the mileage, this 300,000 for medium duty, 500,000 for heavy duty, you keep it in the fleet as a rental vehicle; is that correct?

A. That would be an option. The goal would be to sell.

*Id.* at 136-37. Nothing in the record suggests that RSD's plans for the Subject Trucks differed from this account of its typical practice.

Finally, it is undisputed that RSD "does not purchase trucks to transport goods or people for itself or for other client[s]," *id.* at 230, and that RSD is a registered dealer of vehicles in Vermont, although RSD underscores that it is a registered dealer of "*used* vehicles only," *id.* at 229 (emphasis in original).

## II.    Procedural Background

RSD filed this lawsuit in September 2015 in the District of Vermont, originally asserting six claims: (1) breach of express warranty; (2) breach of implied warranties; (3) detrimental reliance; (4) negligent misrepresentation; (5) fraudulent concealment; and (6) violation of the VCPA. Following a long

7

series of events irrelevant to this appeal,[2] Navistar moved for partial summary judgment in July 2021, seeking dismissal of Counts 4, 5, and 6 (the negligent misrepresentation, fraudulent concealment, and VCPA claims).

That December, the district court denied the motion with respect to the negligent misrepresentation and fraudulent concealment claims, but granted summary judgment to Navistar on RSD's VCPA claim. *RSD Leasing, Inc. v. Navistar Int'l Corp.*, No. 5:15-CV-205, 2021 WL 6802994, at *3-4 (D. Vt. Dec. 8, 2021). In its VCPA discussion, the district court relied primarily on passages from the legislative history of the portion of the statute that it deemed determinative – the Act's definition of a "consumer" – concluding that "[w]ith this history in mind, it is clear that RSD's purchase of trucks to lease to customers cannot be considered consumer transactions." *Id.* at *3. And because RSD therefore was not a "consumer" for purposes of those transactions, it was not entitled to benefit from the VCPA's protections. *Id.*

---

[2] Shortly after it was filed, the action was transferred as a "tag-along" to a multidistrict litigation based in the Northern District of Illinois. After RSD opted out of the eventual settlement there, the case was remanded to the District of Vermont in September 2020. Following additional motion practice and other developments irrelevant to the issues before us, discovery proceeded.

In January 2022, the parties agreed to dismiss all remaining claims so that RSD could immediately seek this Court's review of that ruling. The district court entered final judgment the next day, and this appeal, addressing the VCPA claim alone, followed.

## DISCUSSION

Not only is that single claim the only matter before us on appeal, but because the district court dismissed RSD's claim based solely on the VCPA's definition of a "consumer," we are asked to consider only that narrow aspect of the Act.

### I. Legal Standards

#### A. Standard of Review

We review a district court's grant of summary judgment *de novo*, resolving all inferences in favor of the nonmoving party and affirming only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126-27 (2d Cir. 2013) (internal quotation marks omitted).

9

## B.    *The VCPA, Generally*

The VCPA[3] prohibits "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce." *Greene v. Stevens Gas Serv.*, 177 Vt. 90, 97 (2004), quoting 9 V.S.A. § 2453(a). It was conceived to "protect the public against unfair or deceptive acts or practices and to encourage fair and honest competition," and, in light of that "remedial" purpose, the Vermont Supreme Court has declared that it "must be construed liberally so as to furnish all the remedy and all the purposes intended." *Elkins v. Microsoft Corp.*, 174 Vt. 328, 331 (2002) (internal quotation marks omitted). In the same breath, however, that court has also cautioned that, "[o]f course, liberal construction does not allow us to stretch the language beyond legislative intent." *Id.*

To state a claim under the VCPA, a plaintiff must demonstrate (1) "that the defendant made a misrepresentation or omission likely to mislead consumers"; (2) "that the plaintiff's interpretation of the misrepresentation or omission was reasonable"; and (3) "that the misrepresentation or omission was material in that

---

[3] Until 2012, the VCPA was known as the "Consumer Fraud Act" or "VCFA." *See Dole v. Adams*, 674 F. App'x 98, 99 & n.1 (2d Cir. 2017) (summary order); *McKinstry v. Fecteau Residential Homes, Inc.*, 200 Vt. 392, 394 n.1 (2015).

10

it affected the plaintiff's purchasing decision." *McKinstry v. Fecteau Residential Homes, Inc.*, 200 Vt. 392, 397 (2015). None of those elements are at issue here.[4]

### C.    *"Consumer" under the VCPA*

This appeal instead targets an antecedent question: the definition of "consumer" under the VCPA, a threshold issue that controls whether a plaintiff is entitled to protection under the Act in the first place. *See Messier v. Bushman*, 208 Vt. 261, 272 (2018) ("In order to recover under the [V]CPA, a plaintiff must establish that they are a consumer."). Prior to 1997, "consumer" was defined as

> any person who purchases or contracts for the purchase of merchandise or services not for resale in the ordinary course of his trade or business but for his use or benefit or for the use or benefit of a member of his household or in connection with the operation of his household.

*Barrett v. Adirondack Bottled Gas Corp. of Vt.*, 145 Vt. 287, 293-94 (1984), quoting 9 V.S.A. § 2451a(a). Under that pre-1997 language, "it was unclear whether businesses could bring an action for consumer fraud." *Rathe Salvage, Inc. v. R.*

---

[4] Nor need we concern ourselves with the fact that RSD did not purchase the Subject Trucks directly from Navistar. The Vermont Supreme Court has held that the VCPA imposes "no privity requirement, that is, no provision that the consumer can sue only the retailer and no one further up the supply chain." *Elkins*, 174 Vt. at 331.

*Brown & Sons, Inc.*, 184 Vt. 355, 364 (2008).

In 1997, the definition was expanded to the following, which is still in effect today. Now codified at § 2451a(1), the statutory definition of "consumer" encompasses

> any person who purchases, leases, contracts for, or otherwise agrees to pay consideration for goods or services not for resale in the ordinary course of the person's trade or business but for the person's use or benefit or the use or benefit of a member of the person's household, or in connection with the operation of the person's household or a farm whether or not the farm is conducted as a trade or business, or a person who purchases, leases, contracts for, or otherwise agrees to pay consideration for goods or services *not for resale in the ordinary course of the person's trade or business but for the use or benefit of the person's business or in connection with the operation of the person's business*.

9 V.S.A. § 2451a(1) (emphasis added).[5]

Consequently, among other changes, the 1997 amendment "unambiguously signaled the Legislature's intent to provide businesses with the same protections under the Act as individuals have historically received." *Rathe*

---

[5] Under the Act, "'[g]oods' or 'services' shall include any objects, wares, goods, commodities, work, labor, intangibles, courses of instruction or training, securities, bonds, debentures, stocks, real estate, or other property or services of any kind." 9 V.S.A. § 2451a(2).

*Salvage*, 184 Vt. at 364-65. That much is not in dispute here; Navistar does not argue, for instance, that because RSD is a business and not an individual, it is *per se* disqualified from protection under the VCPA.[6] For purposes of this appeal, the parties dispute only whether RSD was acting as a "consumer" when it purchased the Subject Trucks. That question turns on whether RSD purchased the trucks "not for resale in the ordinary course of [its] trade or business but for the use or benefit of [its] business or in connection with the operation of [its] business." 9 V.S.A. § 2451a(1).

## II. Analysis

We begin our discussion of that question "with the text of the statute to

---

[6] RSD, however, does suggest – incorrectly – that the district court's analysis turned on that point: "When the district court said 'qualifying as a consumer is not the end of the story,' it conceded that RSD is a consumer as that term is defined by the VCPA." Appellant's Br. 16, quoting *RSD*, 2021 WL 6802994, at *3. But that cherry-picked quote is not a fair reflection of what the district court actually meant. Though perhaps phrased in a manner amenable to misreading, the thrust of the passage in question was to acknowledge, correctly, that the *ability* to qualify as a "consumer" for any particular transaction does not hinge on whether a plaintiff is an individual or a business. *See RSD*, 2021 WL 6802994, at *2-3 (explaining that after the 1997 amendment resolved "uncertainty" as to whether businesses could qualify for VCPA protection, "qualifying as a consumer is not the end of the story" because the Act "excludes the purchase of products for resale in the ordinary course of business" and only protects purchasers of products "for use by the business").

13

determine whether the language at issue has a plain and unambiguous meaning." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108 (2d Cir. 2012); *In re D.K.*, 282 A.3d 1195, 1197 (Vt. 2022) ("We begin by examining the text of the statute because we presume that the Legislature intended the plain, ordinary meaning of the statutory language." (internal quotation marks omitted)). The operative portion of the statutory text at issue provides that a person who purchases goods "not for resale in the ordinary course of the person's trade or business but for the use or benefit of the person's business or in connection with the operation of the person's business" qualifies as a "consumer." 9 V.S.A. § 2451a(1). Within that passage is one clause (the "use/benefit/operation" clause) that charts three different paths to "consumer" status based on whether a person purchases goods and services: (1) "for the use" of a business; (2) "for the . . . benefit" of a business; and (3) "in connection with the operation of" a business. *Id.* The same passage also charts a separate route for a purchaser to be *disqualified* from "consumer" status: a person who purchases goods or services "for resale in the ordinary course" of the purchaser's "trade or business." *Id.*

None of those key terms is defined in the statute. Neither the "use" nor

14

"benefit" of a business, nor "in connection with the operation" of a business, are defined terms, leaving the statute ambiguous – at least on its face – as to whether leasing a purchased good to a third party qualifies under any of those provisions, or whether the purchaser must, for example, retain possession of the purchased good in order to "use" it, "benefit" from it, or for the good to connect in some way to the "operation" of the purchaser's business. *Id.* Likewise, "resale" is not defined, leaving the statute similarly indefinite as to whether a lease that transfers possession and, to some extent, control – but not title – to someone other than the original purchaser is a "resale." *Id.* And relatedly, "*for* resale" is not defined, leaving the statute facially agnostic as to whether a purchaser who intends to resell in the future, but who also intends to leverage the good in a way that satisfies the "use/benefit/operation" clause *before* reselling, still qualifies for "consumer" status. *Id.* (emphasis added).

Accordingly, this case requires us to answer as many as four independent questions. *First,* we consider whether a lease is, itself, a "resale" under the VCPA. If so, we need not concern ourselves with any of the other ambiguities in the

15

statute because, regardless of anything else it intended[7] to do with the Subject

Trucks, RSD unquestionably purchased the Subject Trucks intending to lease

them "in the ordinary course" of its business. *Id.* If such leases themselves

constituted resales, then RSD could not be a "consumer" for purposes of those

purchases.[8] *Second*, we consider whether leasing a purchased good to a third

---

[7] We pause to highlight our emphasis on RSD's intent at the time of purchase. Although the parties' focus has at times drifted away from that pivotal moment – e.g., Navistar's suggestion at oral argument that predicating RSD's "consumer" status on the manner in which it ultimately disposes of a truck could allow the same purchaser of the same truck to be "both a consumer and not a consumer" depending on whether, at some later point, it either sells or leases that truck to an end user, Oral Argument 19:00 – those arguments miss the point. What matters under the text of § 2451a(1), per our understanding, is not what the original purchaser in the end *does* with the vehicle, but the purpose "for" which it acquires the vehicle, or, in other words, what it *intends* to do with the vehicle. *See, e.g.*, *Poulin v. Ford Motor Co.*, 147 Vt. 120, 123 (1986) (evaluating the purchaser's intent and expectations at the time of purchase); *see also* Merriam-Webster's Collegiate Dictionary 454 (10th ed. 1993) (defining "for" as "a function word to indicate purpose"); Black's Law Dictionary 645 (6th ed. 1990) (defining "for" as signaling "[t]he cause, motive or occasion of an act"). Although the actual fate of a purchased good may perhaps be probative of its purchaser's intent at the time of sale, it is only the latter that matters under the statute. That, at least, is our understanding of the statute. If, in answering the certified question, it becomes necessary for the Vermont Supreme Court to address this point, and that Court disagrees with our reading, we will be happy to be corrected.

[8] Although later in this opinion we confront the prospect of a purchaser who intends to *first* deal with the purchased good in a manner that satisfies the "use/benefit/operation" clause, and *then* to dispose of the good in a manner that triggers the "not for resale" clause, it cannot be that the Vermont Legislature

party triggers the "use/benefit/operation" clause. If it does not, then we need not trouble with the "not for resale" clause at all, because RSD cannot qualify as a "consumer" regardless of its intention to later resell the Subject Trucks. *Third*, we consider whether, and to what extent, a purchaser who intends to *eventually* resell the purchased good has purchased that good "for resale." And *fourth*, we consider the interaction between those two clauses – that is, how to treat a purchase that is "for the use or benefit of the person's business or in connection with the operation of the person's business" but where the purchaser *also* intends to eventually resell the purchased good.

### A.    Is a Lease Itself a "Resale" under the Act?

Navistar urges us to adopt a blanket rule that "for-profit leasing constitutes

---

intended for the same action to *simultaneously* trigger both of those clauses. We think it self-evident from the disjunctive "but" separating the "use/benefit/ operation" clause from the "not for resale" clause that under the plain language of the statute, the "use," "benefit" or "operation" of the business and "resale in the ordinary course" of that business are treated as mutually exclusive categories. *See* Black's Law Dictionary 200 (6th ed. 1990) (defining "but" as "[e]xcept, except that, on the contrary"); Merriam-Webster's Collegiate Dictionary 155 (10th ed. 1993) (similar); *see also United States v. Harris*, 838 F.3d 98, 105 (2d Cir. 2016) ("Established canons of statutory construction 'ordinarily suggest that terms connected by a disjunctive be given separate meanings.'"), quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979).

resale" under the VCPA. Appellees' Br. 20. It insists that any definition of resale that hinges on whether title transfers alongside the conveyed good would be "nonsensical" because, under that reading, the VCPA would "exclude only those selling goods or services and not those who lease them" even though, after all, "both sellers and lessors create end-user consumers." *Id.* While Navistar's logic is not without some purposivist appeal, we lack a sufficiently firm textual basis to confidently predict that the Vermont Supreme Court would see things that way.

The textual indicators do not favor Navistar. To start, variants of the terms "sale" (of which "resale" is itself a sub-variant[9]) and "lease" are used throughout § 2451a, and at no point are they treated as if they are synonyms, or as if one is a subsidiary of the other. Conspicuously, "Seller" and "Lessor" are defined separately as, respectively, one engaged in "*selling* goods or services" only, 9 V.S.A. § 2451a(3) (emphasis added), and one engaged in "*leasing* goods" only, *id.* § 2451a(7) (emphasis added). Likewise, although § 2451a(4) defines one

---

[9] *See* Black's Law Dictionary 1306 (6th ed. 1990) (defining "resale" as the "act of retailer who purchases goods from manufacturer or wholesaler for purposes of selling such goods in normal course of business"); Merriam-Webster's Collegiate Dictionary 995 (10th ed. 1993) (defining "resale" as "the act of selling again [usually] to a new party").

particular kind of sale to include a "lease," that provision's use of the disjunctive

"or" – defining a "[h]ome solicitication sale" as "the sale *or* lease, or the offer for

sale *or* lease, of goods or services" under certain circumstances – seems to take as

a given that "sale" and "lease" ordinarily carry different meanings.[10] 9 V.S.A.

§ 2451a(4) (emphases added); *see Loughrin v. United States*, 573 U.S. 351, 357 (2014)

(observing that the word "or" "is almost always disjunctive, that is, the words it

connects are to be given separate meanings" (internal quotation marks omitted)).

Even within the Act's definition of "consumer" itself, the terms "purchase[]" (a

term often defined as the complement, or counterpart, to a "sale"[11]) and "lease[]"

appear side-by-side, again separated by a disjunctive "or." 9 V.S.A. § 2451a(1); *see*

*Loughrin*, 573 U.S. at 357.[12]

---

[10] The full definition also makes clear that the provision is aimed at the manner in which the "seller" pursues and procures the transaction – i.e., where the transaction is "personally solicited or consummated by a seller at the residence or place of business or employment of the consumer, or at a seller's transient quarters [e.g., a hotel or motel room], or solicited or consummated by a seller wholly or in part by telephone" – rather than at the nature or extent of the property interest transferred. 9 V.S.A. § 2451a(4).

[11] *See, e.g.*, Black's Law Dictionary 1235 (6th ed. 1990) (defining "purchase" to "[i]nclude[] taking by sale").

[12] On the other hand, the converse interpretation, that the bundling of "sale" and "lease" in § 2451a(4) suggests that the Vermont Legislature may have viewed the

19

Treating "sale," or "resale," as functionally synonymous with "lease" would thus render redundant the Vermont Legislature's pointed variation in its selection of terms. And although redundancy is neither an interpretive "silver bullet," nor even all that "unusual" in many statutes, we are cognizant of the Supreme Court's admonition that "[i]f one possible interpretation of a statute would cause some redundancy and another interpretation would avoid redundancy, that difference in the two interpretations can supply a clue as to the better interpretation of a statute." *Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 881 (2019) (internal quotation marks omitted).

There are other clues that dissuade us from eliding the terms. For one thing, Vermont's Uniform Commercial Code – which the Vermont Supreme Court has looked to in other contexts to inform its analysis of whether a purchaser qualified as a "consumer," *see, e.g.*, *Rathe Salvage, Inc. v. R. Brown & Sons, Inc.*, 191 Vt. 284, 299-300 (2012) – expressly defines a "sale" as a transaction that results in "the passing of title from the seller to the buyer." 9A V.S.A. § 2-106(1). That aligns with a number of lay and legal dictionaries that

---

terms as interchangeable, is also arguable. 9 V.S.A. § 2451a(4); *see* discussion *infra* pp. 21-22.

differentiate between "sale" and "lease" in part through reference to the transfer of title or ownership.[13]

If left to our own devices, we would predict with some confidence that the Vermont Supreme Court would reject Navistar's attempt to equate "lease" and "sale" under the Act. Nevertheless, Navistar's position is not frivolous; as we noted earlier, in at least one portion of the same section of the Act, the Vermont Legislature has subjected sales and leases to the same rules. *See* 9 V.S.A. § 2451a(4); *see also* 32 V.S.A. § 9701(5) (providing that, for purposes of Vermont's sales tax, "'retail sale' or 'sold at retail' means any sale, lease, or rental for any purpose other than for resale, sublease, or subrent"). That legislative choice in § 2451a(4) seemingly reflects the same logic that Navistar urges us to apply just a few subsections earlier to § 2451a(1): the not-uninviting notion that a purchaser

---

[13] *Compare* Black's Law Dictionary 1337 (6th ed. 1990) (defining "sale" as the transfer of "the title and the possession of property" for consideration), *with id.* at 889 (defining "lease" as "a contract by which one owning . . . property grants to another the right to possess, use and enjoy it for specified period of time in exchange for periodic payment of a stipulated price"); *compare* Merriam-Webster's Collegiate Dictionary 1031 (10th ed. 1993) (defining "sale" as "the transfer of ownership of and title to property from one person to another for a price"), *with id.* at 663 (defining "lease" as "a contract by which one conveys [property] for a specified term and for a specified rent").

who, in the regular course of its business, does not itself retain possession of a vehicle but instead transfers possession (even without title) to others is functionally more similar to a sales dealership than to, for example, a florist who purchases a vehicle to deliver floral arrangements. Ultimately, because we refer the broader question of RSD's "consumer" status to the Vermont Supreme Court, we need not conclusively decide this narrower issue. Instead, since the parties' alternative arguments present even closer questions, we deem it prudent to address those questions and, in the end, because they themselves require certification, to leave this question for the Vermont Supreme Court as well.

B. *Does a Lease Fall within the "Use/Benefit/Operation" Clause?*

We thus turn to our second inquiry: whether a purchaser's subsequent lease of a purchased good triggers the "for the use or benefit of the [purchaser's] business or in connection with the operation of the [purchaser's] business" language in 9 V.S.A. § 2451a(1).

We begin by acknowledging the considerable breadth of that language. Read in its most expansive light, it is difficult to imagine what goods a business could possibly purchase that it would not "use" in some way, or to speculate why a business would make any purchase that it did not expect to "benefit" from. And

22

even if, under the principle of *noscitur a sociis, see Yates v. United States*, 574 U.S. 528, 543 (2015) ("[A] word is known by the company it keeps . . . ."), we were tempted to tether those two broader nouns to the arguably narrower noun, "operation," we would still be compelled to read *that* term in light of the open-ended "in connection with" that precedes it, which is a phrase that the Supreme Court has "often recognized . . . can bear a broad interpretation," *Mont v. United States*, 139 S. Ct. 1826, 1832 (2019) (internal quotation marks omitted).

But we need not stretch our imaginations to explore the hypothetical limits of the "use/benefit/operation" clause. The record makes it perfectly clear that RSD did, in at least *some* sense, use – that is, "put into action or service"[14] – the Subject Trucks in connection with its rental operations[15] by leasing them out to other

---

[14] Black's Law Dictionary 1541 (6th ed. 1990); *see* Merriam-Webster's Collegiate Dictionary 1301 (10th ed. 1993) (similar).

[15] "Operation" can adopt a meaning that rivals "use" in its breadth. *See, e.g.*, 10 Oxford English Dictionary 848 (2d ed. 1989) (defining "operation" as "[a] particular form or kind of activity; a mode of action" or "the way in which anything works"). But it can also suggest a narrower meaning, as reflected in dictionary entries that define "operation" as the more mechanical "action of operating a . . . business." *Id.* at 849 (2d ed. 1989); *see also* Black's Law Dictionary 1092 (6th ed. 1990) (defining "operation" as "the *process* of operation" (emphasis added)). Those definitions can plausibly be read to suggest a distinction between the external, final act of marketing output to clients or customers (e.g., selling or leasing a truck), and the internal, intermediate steps that *support* a business's

23

businesses, and that it literally benefitted – that is, derived some "[p]ecuniary advantage, profit, [or] gain"[16] – by deriving revenue from that use.[17] The more difficult question is whether the Vermont Legislature intended the "use/benefit/operation" language to bear its most expansive reading, and if not, precisely where it intended courts to draw the line.

On that question, we are largely on our own; there is vanishingly little Vermont caselaw that addresses whether leasing a purchased good to a third party falls within the "use/benefit/operation" clause. The best the parties are able

---

efforts to market that output (e.g., using a truck to ship inventory). But even giving "operation" that narrower, Navistar-friendly meaning, we think it difficult to argue that a business's output does not, at least in the broadest sense, "connect[]" to the internal, intermediate actions that facilitate that output. 9 V.S.A. § 2451a(1). The harder question is, as we discuss *infra*, whether the Vermont Legislature intended courts to give these terms their broadest meanings.

[16] 2 Oxford English Dictionary 111 (2d ed. 1989); *see* Black's Law Dictionary 158 (6th ed. 1990) (similar).

[17] The parties dispute the extent to which RSD actually profited from the Subject Trucks in the end. But whether the trucks were purchased "for the . . . benefit of [RSD's] business," 9 V.S.A. § 2451a(1)**,** does not turn on whether the purchase ultimately proved beneficial or detrimental to its business. Rather, it is, again, a question of RSD's intentions at the time of purchase. On that front, it is undisputed that RSD's business model is to finance the purchase of the trucks it leases out, and then to directly profit by charging its customers a higher monthly lease payment than RSD itself owes its creditors.

24

to muster (or that we have found) is a single Vermont trial court decision from 2005 that arguably speaks to the issue, albeit inconclusively. That case, *Coughlin v. T.N. Associates*, concerned the attempted sale of a condominium at a Vermont resort, which eventually fell through due (according to the putative buyers) to various broken promises made by the putative sellers. No. 248-11-02LECV, 2005 WL 5872183 (Vt. Super. Ct. Jan. 5, 2005), *aff'd on other grounds*, No. 2005-195, 2006 WL 5866290, at *4 (Vt. May 2006) (declining to "reach the question of whether [buyers] are 'consumers' under the [VCPA]"). The court awarded summary judgment to the sellers, holding that the buyers "d[id] not meet the definition of 'consumer'" for purposes of that transaction. *Id.*

The exact basis for that conclusion, however, is not entirely clear. Navistar characterizes the *Coughlin* court as holding that the buyers "were not 'consumers' under the Act because they purchased a condominium for the purpose of putting the property into a rental program." Appellees' Br. 15. To be sure, in its single paragraph of analysis, the court did remark that

> [u]nder the Act, "consumer" means "any person who purchases, leases, contracts for, or otherwise agrees to pay a consideration for goods or services not for resale in the ordinary course of his or her trade or business *but for his or her use or benefit or the use or benefit of a member*

25

*of his or her household.*" Both the [buyers] have indicated during pre-trial deposition testimony that the purchase of the condominium was a business venture to place the condominium into the rental program at [the resort].

*Id.* (emphasis in original), quoting § 2451a([1]). That passage, as far as it goes, generally supports Navistar's position that someone who buys something intending to lease or rent it to someone else is not a "consumer" under the Act.

But, conspicuously, that passage also invokes only the older half of the VCPA's definition of "consumer," which extends the Act's protection to purchases for personal "household" use. It makes no reference to the post-1997 "business"-inclusive additions that all agree control here. The *Coughlin* court in fact expressly caveated that while the post-1997 definition "also includes 'a person who purchases . . . in connection with the operation of his or her business,'" that provision was not implicated because the *Coughlin* buyers (1) had merely "contemplated" (and never actually "established") a business entity, and (2) had never argued in court that the post-1997 additions applied to them. *Id.* at *1 n.2. With those two asterisks, the court determined that the buyers "planned to purchase the condominium primarily as a for-profit business venture, and therefore cannot be found to be consumers under the Act." *Id.* at *1.

26

For that reason, *Coughlin* can also be read as holding that the buyers

effectively slipped through a crack between the pre- and post-1997 statutes: they

did not qualify as "consumers" under the surviving pre-1997 language because

they did not intend to buy the condominium for their own personal household

use, and they did not qualify under the post-1997 additions because, in the

*Coughlin* court's estimation, they were not a formal "business,"[18] and in any case

had forfeited any argument based on that portion of the Act. As a result, the sole

Vermont decision – a non-binding trial-level decision at that, *see Khan v. Yale*

*Univ.*, 27 F.4th 805, 825 (2d Cir. 2022) – that could arguably help us locate the

precise bounds of the "use/benefit/operation" clause in this context does little to

aid in that endeavor.

There is some federal district court authority in the neighborhood as well.

For example, in *One Source Env't, LLC v. M + W Zander, Inc.*, the court initially

---

[18] We have no occasion to express any view on whether the failure to formally establish a business entity would make any difference under the post-1997 statutory language. The merits of the *Coughlin* court's reliance on that point do not matter here; all that matters for our purposes is whether a Vermont court has held that a purchaser who intends to lease the purchased good to a third party is, or is not, a "consumer" under the Act. Because the *Coughlin* court commingled several possible justifications for its conclusions, it did not unambiguously answer that question. Nor has any other Vermont court.

granted summary judgment to the defendant manufacturer of 18 component filter fan units purchased by the plaintiff, who used those components to manufacture ten mobile clean air units, five of which it then sold to customers. No. 2:12-CV-145, 2015 WL 7428572, at *11-12 (D. Vt. Nov. 20, 2015). That was sufficient to convince the court that the plaintiff had "primarily utilized the [components] to manufacture products for sale" and therefore was "not a consumer within the meaning of the Act." *Id.* Later, however, the court granted a motion for partial reconsideration after the plaintiff submitted an affidavit clarifying how it used the remaining five mobile clean air units that it had not sold: (1) it "leased the units to at least five different businesses for a weekly rental fee of approximately $800 per unit," and (2) it "regularly used the [clean air units] for clean manufacturing at its own facility." *One Source Env't, LLC v. M + W Zander, Inc.*, 2015 WL 7737991, at *2 (D. Vt. Dec. 1, 2015). "Based on [that] clarification," the court held, the plaintiff had "presented sufficient evidence indicating that it acted as a 'consumer.'" *Id.* Although the *One Source* court did not specify whether it was basing that conclusion on the plaintiff's practice of leasing some clean air units out, or the plaintiff's "use[]" of other units at its own facility, *id.*, or both, the case is at least somewhat supportive of RSD's view that

28

using a purchased good for essentially anything other than a literal resale qualifies the purchaser as a "consumer."

Other district judges in this Circuit, meanwhile, have split on that question when faced with scenarios distinguishable both from one another and, certainly, from the facts presented in this case. *Compare MyWebGrocer, Inc. v. Adlife Mktg. & Commc'ns Co.*, 383 F. Supp. 3d 307, 312-13 (D. Vt. 2019) (holding that a website developer was a "consumer" for purposes of the VCPA because by "mak[ing] use of the [stock] photos it licenses in the operation of its business by placing these photos on customers' websites," the plaintiff had purchased them "for the use or benefit of its business"), *with Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*, No. 15-CV-6549 (CM), 2018 WL 7197233, at *52 (S.D.N.Y. Dec. 26, 2018) (holding that a plaintiff health fund "cannot state a claim under [the VCPA] by alleging that it reimbursed for [an Alzheimer's drug] on behalf of its insured members" because "[t]he language of the statute clearly restricts the term 'consumer' to end users of the product").

In any event, while we appreciate those judges' thoughtful insights, they are themselves simply doing their best to predict how the Vermont Supreme Court would construe the VCPA and, thus, even if their decisions suggested a

29

stronger consensus among federal district judges, we would be reluctant to rely upon them alone.

In the absence of any determinative judicial authority, the district court in this case instead relied on the legislative history to the 1997 amendment. It assigned dispositive weight to two statements in particular. The first passage, a single line of legislative testimony from an attorney in Vermont's Consumer Fraud Division, urged that the 1997 amendment would "allow small businesses who are victimized when they purchase something that is not going to be resold in their business, but they purchase something for their own use in their business, they can bring a consumer fraud act [claim]." App'x 191. Putting aside for a moment the proper weight to afford such testimony, that statement does little more than echo the statute's textual distinction between "use" and "resale" without offering any additional insight into the meaning of those terms.[19]

---

[19] We note in passing that, despite the parties' focus on the matter, the VCPA's text does not limit its application to "small" businesses, and that regardless of whether RSD should be considered "small," we are skeptical that a court should interpolate such a limitation into a statute based on snippets of legislative history where the legislature did not choose to include the limiting language in the actual statute. *See United States v. Ng Lap Seng*, 934 F.3d 110, 124 n.18 (2d Cir. 2019) (declining to give interpretive weight to "a reference to 'private organizations' in legislative history" where the enacted statute itself used the term "'organization,' without qualification," noting that "the Supreme Court has

In the second passage, a state representative speaking in support of the

amendment explained:

> [The Amendment] merely expands a portion of this statute to address the issue of – the issue of fraud when it comes to small businesses. This is often found in cases where people are promised certain services over the phone to enhance their business. *This has nothing to do with the final output of the business. It has everything to do with making services within the business itself behave more efficiently.* So over the phone somebody is promised something to enhance the business, ah, making it the advertising on paperbacks outside, and then people pay for the service, never – the service is never delivered.

*Id.* at 183-84 (emphasis added). The district court characterized that statement as

highlighting "the distinction between goods purchased for resale and those

intended for use in the business." *RSD*, 2021 WL 6802994, at *3.

We agree that it does indeed suggest a narrower, Navistar-friendly reading

of the "use/benefit/operation" clause, seemingly distinguishing between

purchases aimed at boosting a business's operational efficiency and purchases

aimed at, or flowing directly into, the business's output itself. One could

---

cautioned against giving authoritative weight to a single passage of legislative history that is in no way anchored in the text of the statute" (internal quotation marks omitted)).

plausibly extrapolate from that statement that the Legislature may have intended for the Act to cover, for example, trucks that a purchaser intends to use to ship the goods it markets to end users, but not trucks that are *themselves* marketed to end users, whether by sale, lease, or short-term rental.

We, again, discern some intrinsic appeal in that distinction as a matter of policy. But set against unmistakably broad statutory language that does not explicitly draw the same line, and without any clear judicial support for that view, we are reluctant to give decisive weight to one, or even two, isolated, and somewhat vague, legislative soundbites when predicting how the Vermont Supreme Court would rule. At the same time, that legislative history, together with one of the plausible implications of *Coughlin*, is enough to dissuade us from blindly adhering to the most expansive possible reading of the "use/benefit/ operation" language. Consequently, we cannot confidently predict whether the Vermont Supreme Court would hold that the intent to lease a purchased good does or does not fall within the "use/ benefit/operation" clause.

C.    *When Is a Purchase "For Resale" under the Act?*

We therefore proceed to the next potentially dispositive inquiry: whether, and to what extent, a purchaser who intends to *eventually* resell the good in

question has purchased that good "for resale."

Here, we have the benefit of some more concrete guidance. In *Poulin v. Ford Motor Co.*, the Vermont Supreme Court was asked to decide whether a plaintiff who had purchased a purportedly "limited-production model" of a Ford Mustang on the assurance that it would "increase in value" was a "consumer" under the VCPA. 147 Vt. 120, 120 (1986). Although *Poulin* was decided before the 1997 amendment, like this case, it turned in relevant part on whether the plaintiff had purchased the good in question "to resell in the ordinary course of his business" or for his own "use or benefit." *Id.* at 123 (internal quotation marks omitted). The defendant car dealers in *Poulin* insisted that the plaintiff was not a "consumer" because he had purchased the car "as an investment, and because he stated [that] he bought and sold cars." *Id.* The court disagreed, emphasizing that the plaintiff's "expectation that the car would appreciate in value does not prohibit him from being a consumer," and concluding from two pieces of testimony – (1) that the plaintiff had "bought the car for his personal benefit" and (2) that although he had in the past "sold cars bought as investments, he was not a used car dealer" – were sufficient to permit a jury to "conclude that he was a 'consumer' under the Act." *Id.*

33

But even assuming the pre-1997 *Poulin* is binding for the RSD-friendly proposition that purchasing a good with an eye towards perhaps, eventually, reselling does not *per se* destroy the purchaser's "consumer" status, that is not quite this case. Here, unlike in *Poulin*, it is undisputed not only *that* RSD affirmatively intended to resell the Subject Trucks, but also *when* and *why* it intended to resell. RSD was not, like the purchaser in *Poulin*, someone who intended to enjoy driving a vintage car but would be open to selling it if it appreciated in value. By its own undisputed account, RSD fully intended to sell the trucks it purchased at the conclusion of each truck's lease term as a regular part of its business model.

*Poulin* therefore offers only limited insight into the key question here. It is not difficult to imagine the Vermont Supreme Court gleaning from *Poulin* a general rule that when a purchaser intends to do something with a purchased good before reselling, the purchase is not "for resale" under the VCPA. But it is no more difficult to imagine the Vermont Supreme Court distinguishing *Poulin*-like purchasers who *might* resell the purchased good at some point in the future, or who have occasionally resold similar purchased goods in the past, from RSD-

like purchasers who, at the time of purchase, affirmatively intend to resell the

purchased good at a specific time (or subject to a specific condition) in the

foreseeable future.[20]

Both options strike us as plausible, and we have no clear basis to

confidently predict which the Vermont Supreme Court would prefer.

### D. What If Both Clauses Are Implicated?

That brings us to the final point of inquiry: whether courts should affix the

"consumer" label to a business that, under the latter reading of *Poulin*, purchases

a good "for resale" in the future, but in the meantime, intends to do something

---

[20] We again emphasize that in this case, unlike in *Poulin*, there is no factual dispute surrounding the purchaser's intent to resell. It is undisputed that RSD intended to resell the Subject Trucks after each respective lease term expired. The essence of the parties' dispute is whether, as a matter of law, that intent amounts to a purchase "for resale" under the statute. Relatedly, while RSD has at times framed aspects of the parties' dispute as factual, that characterization is misguided. When the district court remarked that RSD's purchases are "better described as buying goods for resale," *RSD*, 2021 WL 6802994, at *3, it was not, as RSD now contends, suggesting that Navistar "has the 'better' . . . description of the facts," Appellant's Br. 19. Rather, it was simply summarizing its conclusion that when a business acts in the way that RSD undisputedly acted here, it is not a "consumer" under the VCPA as a matter of law. That is not a jury question. *See Bruce Katz, M.D., P.C. v. Focus Forward, LLC*, 22 F.4th 368, 370 (2d Cir. 2022) ("Interpretations of statutes are pure questions of law . . . ." (internal quotation marks omitted)); *accord Vance v. Locke*, 216 Vt. 423, 435 (2022) (same).

with the purchased good that satisfies the "use/benefit/operation" clause. In other words, if a purchaser of goods "for the use or benefit of" and/or "in connection with the operation of" its business is a "consumer," but a purchaser of goods "for resale" is not, then what are we to make of a business that is both? Neither the plain text of the statute, nor any other Vermont authority, sheds light on that question.

One way to reconcile the two clauses would be to interpret "for resale" as referring to purchases intended *only* for resale, and *not* for "use or benefit of" or "in connection with the operation of" a business. Under that reading, assuming a purchase with the intent to lease satisfies the "use/benefit/operation" clause, a purchaser in RSD's position would qualify as a "consumer" regardless of whether it intends to resell the truck after the initial lease terminates. That reading would neutralize the risk of the statute stepping on its own toes.

But it is no less plausible to interpret "not for resale" as a trump card, compelling a purchasing business that intends to resell to forfeit its "consumer" status regardless of what it intends to do with the purchased good prior to resale. That latter interpretation would of course cry out for some limiting principle; if the VCPA is, as the Vermont Supreme Court has instructed, to be "construed

36

liberally," *Elkins*, 174 Vt. at 331 (internal quotation marks omitted), it cannot be reasonable to infer that the Legislature intended to extend the Act's protections only to purchasers who intend to hold onto their purchased goods *forever*. Consider, for example, a law firm that purchases computers to use for legal research and document production, regularly replaces that equipment to take advantage of advancing technology, but hopes to recoup some modest value from the old machines at the end of their useful life by selling them rather than simply giving (or throwing) them away. It seems unlikely that the Vermont Legislature would have intended for that final, marginal afterthought to negate the firm's primary motivation for purchasing the computers.

Nevertheless, there are any number of plausible limiting principles that could avoid that counterintuitive result – for example, excluding from the VCPA any purchasers who affirmatively intend to resell within a known number of years, or upon the discharging of a condition (such as the termination of a lease) that is known at the time of purchase, or hinging VCPA protection on whether the resale is incidental or central to a purchaser's business model.

Although those latter readings would represent somewhat less "liberal" constructions of the VCPA than the former, it is not clear to us that they would

frustrate the "remedy [or] purposes intended" by the Vermont Legislature. *Id.*

(internal quotation marks omitted). That intent is, of course, precisely what we

are endeavoring to gauge in the first place, and left once again with multiple

plausible, divergent interpretations, we find ourselves without any clear basis to

confidently predict what intent the Vermont Supreme Court would ascribe to its

Legislature.

### III.  Certification

When asked to decide questions of state law, "[i]n the absence of

authoritative law from the state's highest court, we must either (1) predict how

the [state's highest court] would resolve the state law question, or, if state law is

so uncertain that we can make no reasonable prediction, (2) certify the question to

the [state's highest court] for a definitive resolution." *DiBella v. Hopkins*, 403 F.3d

102, 111 (2d Cir. 2005). Here, facing an ambiguous statutory text and scant

Vermont judicial authority to inform any such prediction, we must entertain the

prospect of certification.[21]

---

[21] Vermont's judiciary is receptive to that prospect. *See* Vt. R. App. 14(a) ("The Vermont Supreme Court may answer a question of Vermont law certified to it by a federal court if the answer might determine an issue in pending litigation and there is no clear and controlling Vermont precedent."); *see also* 2d Cir. R. 27.2(a)

When considering whether to exercise our discretion to certify a question, we have traditionally considered (1) "whether a state court decision has ever provided an authoritative answer" to the disputed issue; (2) "the extent to which the question implicates the weighing of policy concerns of particular importance" to the state; and (3) if the state court's answer "may be determinative of the appeal." *Glover v. Bausch & Lomb Inc.*, 6 F.4th 229, 244 (2d Cir. 2021) (internal quotation marks omitted); *see also O'Mara v. Town of Wappinger*, 485 F.3d 693, 698 (2d Cir. 2007) (articulating an alternative formulation of those factors). For the reasons we have already discussed at length, we think the first and third prongs are easily met here. As much as there is currently a dearth of Vermont authority that resolves the relevant issues in this case, a single decision from the Vermont Supreme Court addressing any (or all) of the various inquiries we have identified

("If state law permits, the court may certify a question of state law to that state's highest court."). So too are the parties; although neither side has affirmatively asked us for certification, both indicated at oral argument that they did not object to it, and Navistar presented certification as an alternative to outright dismissal in its summary judgment briefing before the district court, "acknowledg[ing] that there is no Vermont state case directly holding that a lessor of automobiles is excluded under the Act for claims arising from such leased automobiles." Navistar Mot. 22, Dkt. No. 48. In any event, "we are empowered to [certify questions] nostra sponte." *CIT Bank N.A. v. Schiffman*, 948 F.3d 529, 537 (2d Cir. 2020) (internal quotation marks omitted).

39

would almost certainly resolve this dispute in its entirety – at the very least, the portion of the dispute currently before us, which may in turn be dispositive of the entire litigation.

Turning to the second factor, Vermont surely has a significant interest in determining for itself who is entitled to the benefit of statutory consumer protections under its own law. *See Barenboim v. Starbucks Corp.*, 698 F.3d 104, 117 (2d Cir. 2013) (explaining that the second factor weighs in favor of certification where a case "present[s] important issues of [state] law and policy").[22] Tellingly, the parties devote significant energy to various public policy arguments that they contend should influence our interpretation of the Act. Those include whether the Act's protections should extend beyond "small businesses," Appellees' Br. 23-24, or beyond especially vulnerable or "unsophisticated" parties, *id.* at 22-23, or beyond those protections available to businesses in other states, *see* Appellant's Br. 14-15. To the extent any of those considerations have an interpretive role to

---

[22] *See also Hunt Const. Grp., Inc. v. Brennan Beer Gorman/Architects, P.C.*, 607 F.3d 10, 13 n.3 (2d Cir. 2010) (observing that "[n]ot all of our cases mention 'the importance of the issue to the state' as a factor" when determining whether to certify, "[p]resumably . . . because the state court to whom the question is certified, in deciding whether to accept certification, can best evaluate that for itself").

play here, all are best left to Vermont to decide for itself. *See, e.g.*, *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 148 (2d Cir. 2009) (certifying question, reasoning that "whether and to what extent courts should impose strict liability on sellers of used equipment like [defendant] depends on the weighing of various policy considerations, which is best accomplished by the [state's highest court]").

**CONCLUSION**

Thus, for the foregoing reasons, we reserve decision and **CERTIFY** to the Vermont Supreme Court the following question:

> Does a business that purchases goods intending first to lease those goods to end users and then to resell them at the termination of the lease term qualify as a 'consumer' under the VCPA?

"As is our practice, we do not intend to limit the scope" of the Vermont Supreme Court's analysis through our formulation of the certified question or through our own analysis of the various interpretive issues that we have identified. *10 Ellicott Square Ct. Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 126 (2d Cir. 2011). We therefore invite that court to "expand upon or alter this question as it should deem appropriate." *Id.* Finally, it is hereby **ORDERED** that the Clerk of this Court transmit to the Clerk of the Vermont Supreme Court this opinion as our

certificate, together with a complete set of briefs, appendices, and the record filed in this case by the parties. This panel retains jurisdiction for purposes of resolving this appeal after the disposition of the certification by the Vermont Supreme Court.

## CERTIFICATE

The foregoing question is hereby certified to the Vermont Supreme Court pursuant to Vt. R. App. 14(a) and 2d Cir. R. 27.2(a), as ordered by the United States Court of Appeals for the Second Circuit.