*Walton v. Comfort Systems*

# In the
# United States Court of Appeals
## For the Second Circuit

———————

August Term, 2024

(Argued:  December 11, 2024    Decided: September 9, 2025)

Docket No. 23-7944

———————

DAVID WALTON, individually and on behalf of all other persons similarly situated,

*Plaintiff-Appellant,*

KEVIN T. MADDISON, individually and on behalf of all other persons similarly situated,

*Plaintiff-Counter-Defendant-Appellant,*

–v.–

COMFORT SYSTEMS USA (SYRACUSE), INC., doing business as ABJ Fire Protection Co., Inc.,

*Defendant-Counter-Claimant-Appellee.* \*

———————

Before:      CHIN, ROBINSON, and NATHAN, *Circuit Judges*.

———————

_____

\* The Clerk of Court is respectfully directed to amend the caption as reflected above.

This appeal raises important and unsettled questions concerning New York Labor Law § 220. Section 220 states that no worker doing certain types of work on public works projects shall be paid less than the prevailing rate of wages, and it requires contracts for public works projects to include a provision reflecting the contractor's agreement to pay laborers prevailing rates as required by § 220. New York courts have held that a worker subject to this statute can sue the contractor to recover prevailing wages through a third-party beneficiary breach of contract claim.

Here, Plaintiffs-Appellants Kevin Maddison and David Walton sued their former employer, Defendant-Appellee Comfort Systems, seeking to recover, along with other relief, prevailing wages under § 220 for their fire alarm testing and inspection services performed on public works.

The United States District Court for the Northern District of New York (Kahn, *J.*) granted Comfort Systems' motion for partial summary judgment on all prevailing wage related causes of action for three reasons: (1) the contracts did not affirmatively state that Comfort Systems would pay prevailing wages; (2) the contracts shortened the applicable statute of limitations to one year; and (3) even if the above were not true, fire alarm testing and inspection work is not the type of work subject to prevailing wages under § 220. *See generally Maddison v. Comfort Systems USA (Syracuse), Inc.*, No. 5:17-cv-0359, 2020 WL 950288 (N.D.N.Y. Feb. 27, 2020). Plaintiffs appeal.

This appeal raises three questions. First, were Plaintiffs, as fire alarm testers and inspectors, entitled to prevailing wages under § 220? Second, is the promise to pay prevailing wages implicit in every public works contract so that individuals employed on public works projects may sue their employers to enforce the prevailing wage requirement under § 220 even if the employer's written contract does not include the statutorily required promise to pay prevailing wages? And third, are agreements to shorten the statute of limitations in public works contracts to one year enforceable against workers bringing third-party beneficiary breach of contract claims to enforce the prevailing wage law?

Based on precedent from the New York Court of Appeals, we answer the first question in the affirmative. As to the latter two potentially

2

dispositive questions, because we cannot confidently predict how the New York Court of Appeals would answer them, and they are of importance to the state and may require value judgments and public policy choices, we CERTIFY two questions to that Court.

———————

JASON J. ROZGER, Menken Simpson & Rozger LLP, New York, NY, *for Plaintiff-Appellant and Plaintiff-Counter-Defendant-Appellant*.

JESSICA F. PIZZUTELLI, Littler Mendelson, P.C., Fairport, NY, *for Defendant-Counter-Claimant-Appellee.*

———————

ROBINSON, *Circuit Judge*:

This appeal raises important but unsettled questions of state law concerning New York Labor Law ("NYLL") § 220. Section 220 states that no worker doing certain types of work on public works projects shall be paid less than the prevailing rate of wages and requires contracts for employment on such projects to include a provision agreeing to pay prevailing rates. New York courts have held that a worker can sue to recover prevailing wages on a third-party beneficiary breach of contract theory.

Here, Plaintiffs-Appellants Kevin Maddison and David Walton sued their former employer, Defendant-Appellee Comfort Systems, seeking to recover, along

3

with other relief, prevailing wages under § 220 for the fire alarm testing and inspection work they performed on public works.

The United States District Court for the Northern District of New York (Kahn, *J.*) granted Comfort Systems' motion for partial summary judgment on all prevailing wage-related causes of action for three reasons: (1) the contracts did not affirmatively state that Comfort Systems would pay prevailing wages; (2) the contracts shortened the applicable statute of limitations to one year; and (3) even if the above were not true, fire alarm testing and inspection work is not the type of work subject to prevailing wages under § 220. *See generally Maddison v. Comfort Systems USA (Syracuse), Inc.*, 5:17-cv-0359, 2020 WL 950288 (N.D.N.Y. Feb. 27, 2020). Plaintiffs appeal.

This appeal raises three questions: (1) Were Plaintiffs, as fire alarm inspectors and testers, entitled to prevailing wages under § 220? (2) Is the promise to pay prevailing wages implicit in every public works contract so that individuals employed on public works projects may sue their employers to enforce the prevailing wage requirement under § 220 even if the employer's written contract does not include the statutorily required promise to pay prevailing wages? And (3) Are agreements to shorten the statute of limitations in public works contracts

4

to one year enforceable against workers bringing third-party beneficiary breach of contract claims to enforce the prevailing wage law?

We decide the first question in the affirmative. Because we cannot confidently predict how the New York Court of Appeals would answer the latter two, and these questions are "of importance to the state and may require value judgments and public policy choices," we hereby CERTIFY two questions to that Court. *Barenboim v. Starbucks Corp.*, 698 F.3d 104, 109 (2d Cir. 2012).[1]

## BACKGROUND

### I. Factual Background[2]

Comfort Systems is a full-service fire alarm and sprinkler company that offers fire alarm testing and inspection services and repair services.[3] Plaintiffs Maddison and Walton were employed as Alarm Systems Technicians for Comfort Systems: Maddison from May 2011 to May 2015 and Walton from 2013 to 2014. Their job responsibilities included "doing various types of electrical and sprinkler

---

[1] In quotations from caselaw and the parties' briefing, this opinion omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

[2] Because this is an appeal from the district court's grant of summary judgment, we "constru[e] the evidence in the light most favorable to the party against whom summary judgment was granted," here, Plaintiffs, "and draw[] all reasonable inferences in that party's favor." *Covington Specialty Insurance Co. v. Indian Lookout Country Club, Inc.*, 62 F.4th 748, 752 (2d Cir. 2023).

[3] Comfort Systems did business as "abj Fire Protection Co." and the contracts refer to the entity using that name or generically as the "Company."

5

work including, but not limited to, installing, maintaining, inspecting, testing, repairing and/or replacing fire alarm, fire sprinkler, and security system equipment." App'x 283 ¶ 2 (emphasis omitted).

Comfort Systems entered into contracts for fire alarm testing and inspection services with New York public works customers, including Mount Markham Central School District, New York State Veterans Home, Tompkins Cortland Community College, Tri-Valley Central Schools, and Watertown Fire Department.

Relevant to this appeal, all the contracts between Comfort Systems and the public works customers included a clause shortening the statute of limitations for a cause of action against Comfort Systems to one year, stating, "No action shall be brought against Company more than one year after accrual of the cause of action." App'x 131, *see also id.* at 142, 156, 163, 171, 177, 183, 186, 190, 194, 198.

Additionally, some contracts contained a provision stating: "This agree[ment] is entered into with understanding that the services to be provided by abj Fire Protection Co. are not required to be paid under any local, state, or federal prevailing wage statutes." App'x 132, *see also id.* at 137, 143, 150, 157, 164, 172, 178, 184. Some explained that the "contract amount is based on our regular labor rates, if prevailing wage applies contact our office immediately for a revised Agreement." App'x 190, *see also id.* at 194. Two of the contracts stated, "Subscriber

6

shall pay the Company the sum of $500.00 per year for said inspection contract. . . . This proposal amount is based on prevailing wage rates." App'x 220; *see also id.* at 224 ("Subscriber shall pay the Company the sum of: $16,000.00 . . . . This inspection agreement is based on prevailing wage rates."). And several of the contracts were silent as to whether Comfort Systems would pay a prevailing wage. *See* App'x 185–86; *see also id.* at 197–98.

With respect to the scope of work, many of Comfort Systems' public works contracts included language limiting the contracted-for services to testing and inspection and disclaiming any intent to contract for maintenance work. For example, no fewer than fifteen of the contracts stated, "The test & inspection provided under this Agreement does not include any maintenance, repairs, alterations, replacement of parts or any field adjustments whatsoever nor does it include the correction of any deficiencies identified by Company to Subscriber. Nothing herein shall prevent Subscriber from entering into a separate Agreement with Company for the performance of such work." App'x 127; *see also id.* at 134, 139, 145, 152, 159, 166, 174, 180, 185, 189, 194, 197, 219, 223. Some of the contracts discussed fire codes, saying the services provided "meet NFPA requirements," App'x 188, 192, 196, 200, or the "Subscriber should check with their local Fire Marshall (Authority Having Jurisdiction) to make sure the level of testing

requested in the Agreement meets your local code requirements." App'x 188, 192, 196, 200, 226.

## II. Procedural History

On behalf of themselves and a putative class of similarly situated workers, Plaintiffs brought five federal and state law claims against Comfort Systems all arising out of Comfort Systems' alleged failure to pay prevailing wages or adequate overtime pay to its employees: (1) a claim under the Fair Labor Standards Act ("FLSA") for failing to pay Plaintiffs and other class members overtime; (2) a third-party beneficiary breach of contract claim for failure to pay Plaintiffs and other class members prevailing wages for work performed on public projects in New York; (3) a claim under the NYLL for failure to properly include travel time in calculations of overtime pay for Plaintiffs and other class members; (4) a quantum meruit claim for failure to pay prevailing wages; and (5) an unjust enrichment claim for failure to pay prevailing wages.

Maddison sued Comfort Systems in March 2017 and amended his complaint in June 2017. In February 2018, Comfort Systems answered Maddison's amended complaint, responding that it had already paid Maddison prevailing wages to resolve this dispute and bringing an unjust enrichment counterclaim against Maddison to the extent Maddison earned a double recovery from this lawsuit. In

8

April 2018, Maddison moved to add Walton. Following another amendment to the complaint and motions practice concerning Plaintiffs' class claims, the district court granted Comfort Systems' motion to dismiss Plaintiffs' Second Amended Complaint ("SAC") in September 2019. After the magistrate judge granted Plaintiffs' motion to amend the SAC, Plaintiffs filed their Third Amended Complaint ("TAC").

In the meantime, while the district court was deciding the motion to dismiss the SAC, the parties proceeded with discovery and litigation. In May 2019, Comfort Systems moved for partial summary judgment on all of Plaintiffs' prevailing wage-related causes of action. It argued that: (1) Plaintiffs' third-party beneficiary claims failed because the inspection contracts did not expressly state plaintiffs were entitled to prevailing wages, (2) the claims were time-barred due to the contracts' shortening of the applicable statute of limitations, and (3) Plaintiffs' work—testing and inspection—is not subject to the prevailing wage requirement under NYLL § 220. Finally, it argued that Plaintiffs' quantum meruit and unjust enrichment claims must fail because they were based on Plaintiffs' alleged contractual and/or statutory entitlement to prevailing wages.

Plaintiffs opposed, arguing that under NYLL § 220 Comfort Systems was subject to a third-party beneficiary breach of contract claim for its failure to pay

9

prevailing wages, and it could not diminish Plaintiffs' rights by contract. As for Comfort Systems' assertion that fire alarm testing and inspection work does not qualify for prevailing wages under § 220, Plaintiffs pointed to a 2009 New York State Department of Labor ("NYS DOL") opinion letter saying fire alarm and sprinkler testing and inspection is subject to prevailing wages, and to a New York Court of Appeals decision addressing the opinion letter, *Ramos v. Simplex Grinnell LP*, 24 N.Y.3d 143 (2014) ("*Ramos III*"). Plaintiffs additionally argued their quantum meruit and unjust enrichment claims should be maintained as alternative theories for recovery.

In February 2020, the district court granted Comfort Systems' motion for partial summary judgment on Plaintiffs' prevailing wage-related causes of action for three reasons.[4] *Maddison*, 2020 WL 950288, at *1. First, it concluded the contracts shortened the statute of limitations to one year and Plaintiffs, as third-party beneficiaries, were bound to that contract term. *Id.* at *4–5. The district court rejected Plaintiffs' assertion that the term should be considered void as against

_____

[4] Comfort Systems technically moved for partial summary judgment on the SAC. However, by the time the district court decided the motion, the TAC was the operative pleading. And because the TAC "contain[ed] nearly identical claims to those included in the previous amended complaint," the district court "construe[d] Defendant's Motion for Partial Summary Judgment as addressing claims in the" TAC. *Maddison v. Comfort Systems USA (Syracuse), Inc.*, 5:17-cv-0359, 2020 WL 950288, at *3 n.3 (N.D.N.Y. Feb. 27, 2020).

public policy, and noted that they cited no caselaw holding a one-year limitations period in a contract void as against public policy.  *Id.* at *5.[5]

As to Comfort Systems' alternative arguments, the court concluded that Plaintiffs could not enforce the prevailing wage requirement as third-party beneficiaries of Comfort Systems' public works contracts because those contracts did not contain any clauses expressly promising to pay prevailing wages.  *Id.* at *5–6.  In so concluding, it quoted our certification opinion in *Ramos*, where we said, "New York courts have held that, in order for workers to bring a third-party breach of contract claim under NYLL section 220, the contract between the employer and the municipality must expressly state that a prevailing wage will be paid."  *Id.* at *5 (quoting *Ramos v. SimplexGrinnell LP*, 740 F.3d 852, 858 (2d Cir. 2014) ("*Ramos II*")).

Finally, the district court concluded that the testing and inspection services covered by the contract were not subject to prevailing wages under the NYLL.  *Id.* at *7.  It factually distinguished the public works contracts here from the one addressed by the New York Court of Appeals in *Ramos III*.  *Id.*  Because the district

<hr />

[5] The district court also denied Plaintiffs' request for conditional class certification.  *See id.* at *3. That ruling is not pertinent to the issues on appeal.  After the parties reached a settlement in 2022, the district court certified the class for the purposes of settlement.

11

court concluded Plaintiffs were not entitled to prevailing wages, it dismissed Plaintiffs' quantum meruit and unjust enrichment claims. *Id.* at *7–8.[6]

The district court separately dismissed Plaintiffs' FLSA claim as time-barred, so its partial summary judgment on the prevailing wage claims left only Plaintiffs' claim that Comfort Systems failed to credit intra-day travel towards overtime pay under the NYLL. The parties' negotiated resolution of this claim was incorporated into a class action settlement approved by the district court. The settlement agreement expressly reserved Plaintiffs' prevailing wage claims.

Plaintiffs timely appealed, challenging the district court's grant of partial summary judgment on the prevailing wage claims.

## DISCUSSION

Section 220 of the NYLL provides that certain classes of workers employed in connection with public works—meaning work performed for public entities—shall be paid "not less than the prevailing rate." NYLL § 220(3)(a). The statute requires contracts for public works to "contain a provision that each laborer,

---

[6] The district court left open the possibility that the contracts submitted with the summary judgment motion did not represent all contracts relevant to Plaintiffs' claims. As a result, the district court "limit[ed] its dismissal of Plaintiffs' breach of contract, FLSA, quantum meruit, and unjust enrichment claims to those based on the contracts Defendant submitted with its Motion for Partial Summary Judgment, i.e., the Inspection Contracts." *Maddison*, 2020 WL 950288, at *8 n.4. The court did not address whether Plaintiffs could pursue their claims arising based on other relevant contracts. *See id.*

12

workman or mechanic, employed by [the] contractor, subcontractor or other person about or upon such public work, shall be paid" a prevailing wage, as defined by that statute. *Id.* The statute has been held to apply "only to workers employed in construction, maintenance or repair work." *Ramos III*, 24 N.Y.3d at 146.

As noted above, this appeal raises three legal questions: (1) Were Plaintiffs, as fire alarm inspectors and testers, subject to prevailing wages under § 220? (2) Is a promise to pay prevailing wages implicit in every public works contract such that individuals employed on public works projects may assert third-party beneficiary breach of contract claims against their employers to enforce the prevailing wage requirement under § 220 even if the employer's written contract with the public entity does not include the statutorily required promise to pay prevailing wages? And (3) Are agreements to shorten the statute of limitations in public works contracts to one year enforceable against workers bringing third-party beneficiary breach of contract claims to enforce the prevailing wage law?

Based on a 2009 NYS DOL Opinion Letter, we conclude that testing and inspection work falls within the scope of the prevailing wage statute. As to the latter two questions, because New York law "is so uncertain that we can make no reasonable prediction" about the answer to these questions, we conclude the

prudent path is to certify to the New York Court of Appeals. *RSD Leasing, Inc. v. Navistar International Corp.*, 81 F.4th 153, 169 (2d Cir. 2023).

## I. Fire Alarm Testing and Inspection Work and the Scope of NYLL § 220

NYLL § 220 provides that on public works projects "laborers, workmen or mechanics" must be paid no less than "the prevailing rate of wages." NYLL § 220(3)(a). Nobody disputes that Plaintiffs are "laborers, workmen or mechanics" within the meaning of § 220, nor that the Comfort Systems contracts at issue were for public works. But there is a dispute as to whether the contracts for inspection and testing work is "covered" work—meaning work entitled to prevailing wages under NYLL § 220. *Ramos II*, 740 F.3d at 856. The New York Court of Appeals has described covered work under § 220 as "construction, maintenance or repair work." *Ramos III*, 24 N.Y.3d at 146. So the question is whether testing and inspecting fire alarms is "construction, maintenance or repair work." *Id.*

We conclude that it is. In 2009, the NYS DOL concluded as much, and the case in which it reached that conclusion is not sufficiently different from this case to call its conclusion into question. Because the NYS DOL opinion is entitled to our deference, we conclude that Plaintiffs are within the class of workers entitled to prevailing wages in connection with the contracts at issue.

14

Before the time period at issue in this case, in response to a specific request from employer SimplexGrinnell, the NYS DOL issued an opinion letter that addressed whether SimplexGrinnell workers who tested and inspected fire alarm and suppression systems in public buildings in New York were covered by the prevailing wage statute. NYS DOL RO-09-0180 (December 31, 2009) ("NYS DOL Opinion Letter"). SimplexGrinnell asserted that "public contracts for code-compliance inspections and testing are outside of the coverage of Article 8 of the Labor Law since they do not involve maintenance or repairs."[7] *Id.* at 2. The NYS DOL responded,

> [T]hat assertion fails to recognize "the nature, or the direct or primary objective, purpose and function of the work product of the contract," i.e. the purpose of the contracts for inspection and testing, which you characterize as being merely to satisfy a customer's compliance with state or local code provisions, in fact, generally require inspections to be undertaken so as to ensure that systems are properly operating up to code standard, and if not, that necessary repairs are made.

*Id.*

The letter noted the New York State Fire Code's "basic requirement for periodic inspection and testing of fire systems in order to ensure its operational integrity," and concluded that "a contract to satisfy the [applicable] inspection and

---

[7] Section 220 is a part of Article 8 of the Labor Law.

testing requirements . . . is, in the opinion of this Department, an integral part of an overall contract for the maintenance of a system and is, therefore, included within the coverage of Article 8 of the Labor Law." *Id.* It concluded, "Accordingly, any public contracts which are aimed, either explicitly or impliedly, at satisfying the testing and inspection requirements of . . . any . . . code adopted for the purpose of maintaining fire systems in proper operating order are within the coverage of Article 8 of the Labor Law." *Id.*

The NYS DOL further noted that *state* contracts related to fire system maintenance treat "maintenance services" as including "testing, inspection and monitoring," and that SimplexGrinnell's own representative described "maintenance activities" as including testing. *Id.* at 2–3. And it noted that SimplexGrinnell's Standard Fire Alarm Testing and Inspection Procedure contemplates replacement of broken pull station rods or glass and otherwise combined testing with "corrective actions that are needed to maintain the system in proper working condition." *Id.* at 3.

The letter ultimately concluded, "For these reasons, the Department of Labor is now of the opinion that the testing of fire systems is included within the

category of system maintenance and is, therefore, subject to the payment of prevailing wages." *Id.*[8]

This DOL Opinion Letter squarely applies to the testing and inspection services that are the subject of the public contracts here. In fact, at least some of the Comfort Systems contracts at issue *expressly* state that they "[m]eet[] NFPA [r]equirements" (which are incorporated in the New York State Fire Code), App'x 188, 192, 196, 200, and "Subscriber should check with their local Fire Marshal (Authority Having Jurisdiction) to make sure the level of testing requested in the Agreement meets your local code requirements." App'x 188, 192, 196, 200, 226.

And we reject Comfort Systems' contention that this case is distinguishable insofar as some of its contracts specifically disclaim any intent to contract for "maintenance" services,[9] and the 2009 NYS DOL Opinion Letter specifically noted

---

[8] The NYS DOL concluded that, in light of confusion as to the applicability of the prevailing wage law to testing and inspection work, its opinion should apply only *prospectively* "unless a previous contract actually required the payment of prevailing wages" for such work. NYS DOL Opinion Letter at 3. The impact of this determination that its interpretation should apply only prospectively was the subject of litigation in this Court and, upon certified questions, the New York Court of Appeals. *See Ramos v. SimplexGrinnell LP*, 740 F.3d 852, 855–58 (2d Cir. 2014) ("*Ramos II*"); *Ramos v. Simplex Grinnell LP*, 24 N.Y.3d 143, 146–7 (2014) ("*Ramos III*"). The prospectivity of the NYS DOL's Opinion Letter is not at issue here, where all of the work at issue took place *after* the NYS DOL issued its opinion letter.

[9] In particular, Comfort Systems' contracts state, "The test & inspection provided under this Agreement does not include any maintenance, repairs, alterations, replacement of parts or any field adjustments whatsoever nor does it include the correction of any deficiencies identified." App'x 127; *see also id.* at 134, 139, 145, 152, 159, 166, 174, 180, 185, 189, 193, 197, 219, 223.

17

that the employer's own description of "maintenance services" incorporated testing. NYS DOL Opinion Letter at 3. We don't read the NYS DOL Opinion Letter as resting on this employer-specific factor. The NYS DOL's reasoning rested primarily on general observations about the "nature and purpose of the inspection and testing of fire systems" as maintenance services. *Id.* at 3. The NYS DOL's reference to SimplexGrinnell's own statements regarding its maintenance practices bolstered its conclusion that, as a general matter, testing and inspecting are parts of maintenance. *Id.* (noting that "testing and inspection appear to be included, *independent of the above discussed factors*, as integral parts of the maintenance of fire systems by employees working within your own company") (emphasis added).

Comfort Systems cannot contract around the prevailing wage requirement for testing and inspection services. As the Court of Appeals concluded in connection with the same controversy that led to the 2009 NYS DOL Opinion Letter, in requiring employers to include a provision agreeing to comply with § 220, "The legislature surely meant that the parties must agree to comply with the law as correctly understood, not as the parties may have misunderstood it." *Ramos III*, 24 N.Y.3d at 148.

18

Under New York law, the NYS DOL Opinion Letter is entitled to deference from this Court. *See Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 79 (2008) ("The Labor Department's interpretation of a statute it is charged with enforcing is entitled to deference. The construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld."); *Chesterfield Assocs. v. New York State Dep't of Labor*, 4 N.Y.3d 597, 604 (2005) (holding that the Commissioner of Labor's determination was entitled to deference unless it was "irrational or unreasonable"); *Ramos II*, 740 F.3d at 856 (the NYS DOL's conclusion in its 2009 Opinion Letter that testing and inspection services are covered work is entitled to deference). For that reason, we conclude that Plaintiffs here were entitled to prevailing wages.

## II. Enforcing § 220 Through Third-Party Beneficiary Claims Absent Express Contractual Promises

The next question is whether Plaintiffs can vindicate that right through a civil claim against Comfort Systems for breach of contract based on a third-party beneficiary theory. To answer this question, we consider: (1) the history and structure of § 220, (2) the New York Court of Appeals' decisions allowing third-party beneficiary breach of contract claims to enforce the prevailing wage requirement of § 220, (3) New York's general law concerning third-party beneficiary breach of contract claims, and (4) New York Appellate Division third-

19

party beneficiary cases potentially pointing in conflicting directions with respect to the critical question here. We conclude that, although *general* principles of New York common law governing third-party beneficiary claims may suggest that Plaintiffs cannot pursue a direct breach of contract claim under these circumstances, some New York Appellate Division cases regarding third-party beneficiary breach of contract claims seeking to enforce the right to prevailing wages under § 220 suggest otherwise, causing substantial uncertainty as to how the Court of Appeals would answer the question presented here.

### A. New York Labor Law § 220

New York first passed a prevailing wage labor law in 1894 that stated that "every contract . . . made by the state or any municipal corporation, for the performance of public works must" ensure that "all . . . mechanics, workingmen and laborers . . . receive not less than the prevailing rate of wages." Act of May 10, 1894, Chap. 622, § 2, 1894 N.Y. Laws 1569, 1569, *repealed and superseded by* Act in Relation to Labor, Chap. 415, Art. I, § 3, 1897 N.Y. Laws 461, 463, *later amended by* Act to Amend Chapter 415 of the Laws of 1897, Chap. 567, § 3, 1899 N.Y. Laws 1172, 1172–73. In 1901, the New York Court of Appeals concluded that the New York Constitution did not authorize such a law, *see People ex rel. Rodgers v. Coler*, 166 N.Y. 1 (1901), and the New York Constitution was amended to give the

20

legislature such power. *See* Concurrent Resolution, 1903 N.Y. Laws 1453, 1453 (legislative proposal of constitutional amendment to be submitted for approval at the 1905 general election); *see also People ex rel. Williams Engineering & Contracting Co. v. Metz*, 193 N.Y. 148, 154–55 (1908) (noting that constitutional amendment took effect January 1, 1906); *Cayuga-Onondaga Counties Board of Cooperative Educational Services v. Sweeney*, 89 N.Y.2d 395, 401 (1996). In 1906, the legislature again passed a law requiring payment of prevailing wages in connection with public works contracts. *See* Act to Reenact Section Three of the Labor Law, Chap. 506, § 3, 1906 N.Y. Laws 1394, 1395; *Williams Engineering*, 193 N.Y. at 155–56. The statute specifically stated, "Each such contract hereafter made shall contain a stipulation that each such laborer, workman or mechanic, employed by such contractor, subcontractor or other person on, about or upon such public work, shall receive such wages herein provided for." Chap. 506, § 3, 1906 N.Y. Laws at 1395; *see also Williams Engineering*, 193 N.Y. at 156.

Highlighting the significance of the prevailing wage protection to New York's labor policy, the prevailing wage protection was enshrined in the New York Constitution in 1939: "No laborer, worker or mechanic, in the employ of a contractor or sub-contractor engaged in the performance of any public work, shall be . . . paid less than the rate of wages prevailing in the same trade or occupation

in the locality within the state where such public work is to be situated, erected or used."  N.Y. Const. art. I, § 17.

NYLL § 220 is the current iteration of New York's prevailing wage requirement and in relevant part provides:

> The wages to be paid for a legal day's work, as hereinbefore defined, to laborers, workmen or mechanics upon such public works, shall be not less than the prevailing rate of wages as hereinafter defined. . . .  Such contracts shall contain a provision that each laborer, workman or mechanic, employed by such contractor, subcontractor or other person about or upon such public work, shall be paid the wages herein provided.

NYLL § 220(3)(a).

The administrative enforcement mechanism under § 220 was enacted in 1927.  *See* Act to Amend the Labor Law, Chap. 563, sec. 2, § 7, 1927 N.Y. Laws 1340, 1341; *see also* NYLL § 220(7).  It provides that a "fiscal officer," as defined by the statute, may investigate an employer based on a complaint or on the officer's own initiative.  NYLL § 220(7).  Within six months, the fiscal officer must issue an order directing any payment due.  *Id.*  There is no private right of action expressly codified within the NYLL "until an administrative determination in the employee's favor has been made and has gone unreviewed or has been affirmed."  *Marren v. Ludlam*, 14 A.D.3d 667, 669 (N.Y. App. Div. 2d Dep't 2005).

The New York Court of Appeals has said "proceedings under section 220 are the antithesis of proceedings for the enforcement of private rights, statutory or otherwise," explaining that the proceedings "have the earmark of a powerful administrative mechanism for the enforcement of a strong public policy, over which a private complainant has no control." *Cayuga-Onodaga Counties Board*, 89 N.Y.2d at 402–03. That said, the New York Court of Appeals has concluded that, at least in some cases, workers can enforce the prevailing wage requirement through a private breach of contract claim, relying on their status as third-party beneficiaries.

### B. *New York Court of Appeals:* Fata, Wright *and* Ramos

The two most on-point New York Court of Appeals cases addressing this issue are *Fata v. S.A. Healy Co.*, 289 N.Y. 401 (1943), and *Wright v. Wright Stucco*, 50 N.Y.2d 837 (1980). The Court of Appeals' more recent decision in *Ramos III*, 24 N.Y. 3d at 143, also offers some potential clues.

In *Fata*, the plaintiff was employed by the defendant as a "pump operator" on public works projects performed for New York City. 289 N.Y. at 403. The contract between the defendant employer and the City entity said laborers, mechanics, and workers would receive prevailing wages, and it set forth the specific wage amounts for those workers in a schedule of wages annexed to the

23

contract. *Id.* at 404–05. The plaintiff argued he was not paid accordingly and he brought a third-party beneficiary contract claim instead of using the administrative enforcement mechanism in § 220. *Id.* at 404. The Appellate Division concluded that the plaintiff could not sue as a third-party beneficiary because third parties can sue to enforce contract provisions only where both parties to the contract intended for a third party to benefit. *Id.* at 405–06. But there, the contract provision was inserted simply because § 220 mandated its inclusion. So the contracting parties evinced no voluntary intent and, in the absence of intent, a third-party beneficiary claim could not survive. *Id.*

The New York Court of Appeals reversed, holding a plaintiff could bring a third-party beneficiary claim to enforce the contractual promise. The Court of Appeals concluded the contract at issue was "not an agreement merely to pay wages at an unfixed rate not less than the 'prevailing rate' as defined by the statute, but an agreement to pay wages at rates fixed in accordance with the statute and set forth in a schedule of wages annexed to the contract." *Id.* at 406. Because the wage obligation incorporated into the contract was more specific than the statute, the Court of Appeals concluded that the plaintiff was not limited to the statutory remedy under § 220, but could pursue a breach of contract claim as a third-party beneficiary. *Id.* at 406–07.

24

In blessing the third-party beneficiary claim, the *Fata* court seemed to rely on evidence that the public works contract at issue evinced a particular intent to pay set wages beyond the general requirements of § 220. However, the New York Court of Appeals subsequently drew a broader lesson from *Fata*.

In *Wright v. Wright Stucco*, a general contractor on a public works project signed a contract requiring it to pay prevailing wages to its workers and to impose the same obligation on its subcontractors. 72 A.D.2d 959, 959 (N.Y. App. Div. 4th Dep't 1979). Plaintiffs, who worked for a subcontractor on the project, alleged they were paid less than the prevailing wages and sought to enforce their rights as third-party beneficiaries of the general contractor's agreement. *Id.*

Defendants moved to dismiss the complaint, contending the sole remedy for plaintiffs was the statutorily provided administrative remedy. *Id.* The trial court denied the motion, but a divided Appellate Division reversed. *Id.* It rejected the notion that simply including a promise to pay prevailing wages in the contract could lead to a third-party beneficiary breach of contract claim. *Id.* It distinguished *Fata* on the basis that in *Fata* the contract contained a schedule of wages that went beyond simply stating the statutory prevailing wage requirement. *Id.* at 960. In contrast, in *Wright*, the court held that "there are persuasive policy reasons why the prevailing wages for any given locality should

25

be determined uniformly by administrative action rather than judicially and why employers should not be subject to numerous actions by their employees when the Legislature has established an efficient and expeditious method for employees to obtain relief." *Id.*

The dissent took a contrary view. It observed it has long been public policy in New York that workers on public works projects be paid prevailing wages. *Id.* (Cardamone, J.P., and Hancock, Jr., J., dissenting). And it noted that until 1927, when the New York legislature created the administrative enforcement process, the *only* way to enforce the prevailing wage statute was through a common-law contract claim. *Id.* The dissent explained that plaintiffs relying on the contractual remedy faced challenging problems of proof, and *public* employees had no means to pursue a third-party beneficiary breach of contract claim. *Id.* Citing *Fata*, the dissent rejected the claim that the statutory administrative remedy superseded the pre-existing contractual remedy. *Id.* The dissent emphasized that the statute was focused on the "protection of workingmen against being induced, or obliged, to accept wages below the prevailing rate" and that it "must be construed with the liberality needed to carry out its beneficent purposes." *Id.* Thus, the dissent concluded, it would be "incongruous to hold . . . that this ameliorative statute actually had the effect of removing a remedy which workers had heretofore

26

possessed." *Id.* Instead, the dissent argued, adding the administrative option "simplified and implemented the worker's remedy by removing some of the burdens that a normal law suit would entail." *Id.*

On appeal, the Court of Appeals endorsed the dissent's view. *Wright v. Herb Wright Stucco*, 50 N.Y.2d 837, 839 (1980) ("Order reversed, . . . and the order of Supreme Court, Monroe County, reinstated for reasons stated in the dissenting memorandum at the Appellate Division."). Together *Fata* and *Wright* suggest that, at least where a public works contract promises to pay prevailing wages as required by § 220, a third-party worker may enforce the prevailing wage requirement through a third-party beneficiary breach of contract claim.

One recent Court of Appeals decision may offer some additional clues, though it doesn't move the needle far. In *Ramos III*, the Court of Appeals considered certified questions in a third-party beneficiary contract claim seeking to enforce prevailing wage rights under § 220. 24 N.Y.3d at 146. The employer committed to paying prevailing wages as required by § 220, but at the time the parties formed their contract, the employer did not think the work it hired the plaintiffs to do was within the scope of § 220. *Id.* at 147–48. This Court asked the New York Court of Appeals whether the contractor's commitment to pay prevailing wages supported a contract claim even for workers the parties did not

understand to be subject to § 220 when they entered into the contract. *See id.* at 148. The Court of Appeals answered:

> An agreement to comply with a statute is an agreement to comply with it as correctly interpreted, whether or not the correct interpretation was known to the parties at the time of contracting. That is particularly clear where, as here, a contractual clause agreeing to comply is required by the statute itself. The legislature surely meant that the parties must agree to comply with the law as correctly understood, not as the parties may have misunderstood it.

*Id.* As suggested more fully below, the Court of Appeals' focus on the requirements of § 220, rather than the intent of the contracting parties, may be significant.

None of these cases resolves the question here—whether the employer can avoid a third-party beneficiary claim by failing to include the statutorily required prevailing wage commitment in the public works contract. But New York's general common law regarding third-party beneficiary claims suggests that may be possible.

### C. *Third-Party Beneficiary Contract Claims under New York Common Law*

Under New York law, third parties may sue as beneficiaries on contracts made for their benefit. Therefore, a party asserting rights as a third-party beneficiary must be able to show that the contracting parties had the specific

"intent to benefit the third party." *Dormitory Authority of the State of N.Y. v. Samson Construction Co.*, 30 N.Y.3d 704, 710 (2018). Otherwise, the third party is merely an "incidental beneficiary" with no independent right to enforce the contract. *Id.*

"A party asserting rights as a third-party beneficiary [under New York law] must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [the third party's] benefit and (3) that the benefit to [the third party] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [the third party] if the benefit is lost." *Madeira v. Affordable Housing Foundation, Inc.*, 469 F.3d 219, 251 (2d Cir. 2006). The New York Court of Appeals has recognized a third party's right to sue to enforce a contract when it is "clear from the language of the contract that there was an intent to permit enforcement by the third party." *Dormitory Authority*, 30 N.Y.3d at 710. Under New York law, courts focus on the intent of the contracting parties; if the contracting parties do not intend to benefit the third party, there is no third-party beneficiary cause of action. *See id.* At issue here is whether and how these principles apply when, regardless of the contracting parties' intentions, whether stated or unspoken, New York law *requires* them to include a prevailing wage guarantee in their contract.

*D. New York Appellate Division Cases*

Several decisions of the Appellate Division of the New York Supreme Court shed light on this issue—although we don't read them to all point in the same direction. On one hand, *Singh v. Zoria Housing, LLC*, 163 A.D.3d 1025, 1025–26 (N.Y. App. Div. 2d Dep't 2018), and *Wroble v. Shaw Environmental & Infrastructure Engineering of New York, P.C.*, 166 A.D.3d 520, 521 (N.Y. App. Div. 1st Dep't 2018), suggest that, in derogation of New York's general common law rules regarding third-party beneficiary claims, the contracting parties' stated intentions as to the availability of a third-party breach of contract claim are not dispositive. On the other hand, the court in *Maldonado v. Olympia Mechanical Piping & Heating Corp.*, 8 A.D.3d 348, 350 (N.Y. App. Div. 2d Dep't 2004), suggested that the existence and terms of the specific contract at issue are essential elements of a third-party beneficiary contract claim to enforce prevailing wage rights under § 220.

    i.   <u>Singh *and* Wroble</u>

*Wroble* is most squarely on point. There, a defendant—SLSCO—was a general contractor who entered into a public works contract with New York City. 166 A.D.3d at 520. In the contract, SLSCO agreed to pay prevailing wages in compliance with § 220 to workers, laborers, and mechanics that it or its subcontractors employed on the project. *Id.* The contract also contained a

provision expressly "prohibiting third parties from bringing any 'new right of action' under the contract." *Id.* at 521.

Plaintiffs, employed by a subcontractor, brought a third-party beneficiary breach of contract claim against both the subcontractor and SLSCO. *Id.* SLSCO moved to dismiss, arguing that the contract provision expressly prohibiting third-party beneficiary actions relieved it of any liability. *Id.*

The First Department rejected SLSCO's argument. Even though the contracting parties' language expressly precluded third-party beneficiary contract claims, the court concluded that because § 220 "must be construed with the liberality needed to carry out its beneficent purposes . . . the contract clause prohibiting third-party actions for violation of prevailing wage payments would be void as against public policy." *Id.* This is in marked contrast to the ordinary putative third-party beneficiary contract case in which the intentions of the actual parties to the contract determine the availability of a third-party beneficiary claim. *See, e.g.*, *Dormitory Authority*, 30 N.Y.3d at 710 ("We have previously sanctioned a third party's right to enforce a contract . . . when it is . . . clear from the language of the contract that there was an intent to permit enforcement by the third party.").

At a minimum, *Wroble* suggests that, in contrast to other kinds of third-party beneficiary claims, the right to pursue a third-party beneficiary claim for

prevailing wages does not depend entirely on the intent of the contracting parties. In fact, it appears it does not depend *at all* on the intent of the contracting parties.

The Second Department considered a similar issue in *Singh*. In *Singh*, the plaintiff was employed by the defendant, Zoria Housing, which performed work at properties owned by the New York City Housing Authority ("NYCHA"). 163 A.D.3d at 1025. He brought a prevailing wage lawsuit as a third-party beneficiary to the contracts between Zoria and NYCHA, which contained a provision requiring the payment of prevailing wages. *Id.* In support of its motion to dismiss, Zoria submitted a bid document purportedly reflecting the agreement between Zoria and NYCHA; it contained a provision that would have required the plaintiff to exhaust available administrative remedies before bringing a claim. *Id.* at 1026.

The Second Department concluded that the plaintiff had stated a viable third-party beneficiary contract claim, saying:

> In situations where the Labor Law requires the inclusion of a provision for payment of the prevailing wage in a labor contract between a public agency and a contractor, a contractual obligation is created in favor of the contractor's employees, and an employee covered by or subject to the contract, in his or her status as third-party beneficiary to the contract, possesses a common-law cause of action against the contractor to recover damages for breach of such a contractual obligation.

*Id.* at 1025–26.

As to the purported agreement requiring exhaustion of administrative remedies, the court said, "Contrary to the defendants' contention, the plaintiff was not required to exhaust any available administrative remedies prior to asserting the breach of contract causes of action, notwithstanding any provisions of that bid document pertaining to administrative processes." *Id.* at 1026.

The court did not further explain its reasoning, and the two cases it cited in support of its conclusion offer few additional clues. *See Cox v. NAP Constr. Co., Inc.*, 10 N.Y.3d. 592, 606–07 (2008) (considering federal and state prevailing wage requirement and concluding "plaintiffs do not have any administrative remedies they can exhaust"); *Stennett v. Moveway Transfer & Storage, Inc.*, 97 A.D.3d 655, 656–57 (N.Y. App. Div. 2d Dep't 2012) (allowing plaintiff to bring a third-party beneficiary claim based on an alleged violation of an analogous statute, NYLL § 231, even though the plaintiff had not exhausted administrative remedies under the statute yet). *Singh* suggests that, *even if* the public works contract purported to impose restrictions on a third-party beneficiary claim that would limit or preclude the availability of that claim, such a provision would not be enforceable. Again, that's not how third-party beneficiary claims ordinarily work.

Notably, in both *Wroble* and *Singh* the public works contracts at issue included the statutorily required language promising to pay prevailing wages.

33

But their conclusions suggest that even absent that language, Plaintiffs here may be able to pursue third-party beneficiary contract claims. After all, if public works contractors can't outright *prohibit* such private contract claims through express *prohibitions* in the contract, they presumably can't accomplish the same thing by simply omitting the statutorily required language.

ii. *Maldonado*

Not all cases decided by the Appellate Division point in the same direction. In *Maldonado*, the trial court dismissed plaintiffs' contract suit against their former employer for failing to pay prevailing wages in a public works contract. 8 A.D.3d at 349. On appeal, the Second Department said, "The workers protected by Labor Law § 220 are third-party beneficiaries of the contract between their employer and the municipality, and they possess a cause of action against their employer to recover damages for breach of contract *when the contract between the employer and the municipality expressly provides for the wages to be paid to such workers.*" *Id.* at 350 (emphasis added). However, citing general principles of contract law, the court said, "In order to plead a breach of contract cause of action, a complaint must allege the provisions of the contract upon which the claim is based. The pleadings must be sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be

34

proved as well as the material elements of each cause of action or defense." *Id.* Because the plaintiffs failed to identify the breached contracts, the Appellate Division affirmed the dismissal of the plaintiffs' third-party beneficiary prevailing wage claim. *Id.*

It is not clear whether the problem in *Maldonado* was the absence of *express* contractual language supporting the prevailing wage claim or the absence of an identified contract at all. However, either way, *Maldonado* suggests that a plaintiff's third-party beneficiary breach of contract claim to enforce § 220's prevailing wage provisions must be supported by the terms of a specific contract. *Maldonado* suggests the possibility that a third-party worker may not be able to bring a contract action to vindicate § 220 prevailing wage rights if the underlying contract is *silent* as to the prevailing wage obligation.

### *E. Conclusion*

The New York Court of Appeals has not addressed the question before us here, and the state of the law "is so uncertain that we can make no reasonable prediction" as to how it would resolve the issue. *RSD Leasing, Inc. v. Navistar International Corp.*, 81 F.4th 153, 169 (2d Cir. 2023).

Not only are Appellate Division cases divided, but sound policy and other considerations point in cross-cutting directions. On the one hand, the New York

35

Legislature's requirement that public works contracts specifically include a prevailing wage commitment suggests it intended to give workers a private contract claim to enforce the prevailing wage right—especially given the lack of any other enforcement mechanism at the time. *See Wright*, 72 A.D.2d at 960. And it would be incongruous to allow a public contractor to avoid that potential liability by simply ignoring its statutory obligation and omitting the required language from the public works contract. A strong argument can be made that by virtue of § 220(3)(a), every public works contract includes the required prevailing wage provision, *whether or not it expressly says so*, and without regard to the contracting parties' intent to allow a third-party beneficiary claim. *See also* 11 Williston on Contracts § 30:19 (4th ed.) ("Under this presumption of incorporation, valid applicable laws existing at the time of the making of a contract enter into and form a part of the contract as fully as if expressly incorporated in the contract.").

On the other hand, under ordinary common law principles in New York, that's not how third-party beneficiary claims usually work. And Comfort Systems makes a fair point that Plaintiffs chose to pursue a third-party beneficiary breach of contract claim rather than to pursue administrative claims.

**III.    Effect of Contractually Shortened Statute of Limitations on Third Party Beneficiary Claims**

The statute of limitations question raises similar issues.  The statute of limitations for an ordinary third-party beneficiary breach of contract claim is six years because it is "an action upon a contractual obligation or liability, expressed or implied."  N.Y.C.P.L.R. § 213(2).  But Comfort Systems' public works contracts all include provisions shortening the statute of limitations to one year.  Specifically, the contracts read, "No action shall be brought against Company more than one year after accrual of the cause of action."  App'x 131; *see also id.* at 142, 156, 163, 171, 177, 183, 186, 190, 194, 198.

We don't doubt that the shortened statute of limitations is reasonable.  "Parties to a contract may agree to a shorter period of limitations within which an action may be brought so long as the period agreed to is not unreasonably short."  *Hurlbut v. Christiano*, 63 A.D.2d 1116, 1117 (N.Y. App. Div. 4th Dep't 1978) (citing N.Y.C.P.L.R. § 201; *Planet Constr. Corp. v. Board of Educ. of City of N.Y.*, 7 N.Y.2d 381 (1960)).  And under New York law, a one-year statute of limitations period is generally reasonable.  *See, e.g.*, *Timberline Elec. Supply Corp. v. Insurance Company of North America*, 72 A.D.2d 905, 906 (N.Y. App. Div. 4th Dep't 1979), *aff'd* 52 N.Y.2d 793 (1980) (finding shortened one year statute of limitations was reasonable); *Krugman & Fox Construction Corp. v. Elite Associates, Inc.*, 167 A.D.2d 514, 515 (N.Y.

App. Div. 2d Dep't 1990) (noting that one year "abbreviated" limitations period was "valid and enforceable").

And it's clear that under New York law third-party beneficiaries are generally bound by the terms of the contracts pursuant to which they sue— including any provisions shortening the applicable limitations period. *See, e.g.*, *Timberline Elec. Supply Corp.*, 72 A.D.2d at 906 ("[A]ny right [the third party] has under the . . . agreement arises because of [the third party's] status as a third-party beneficiary. As such [it] is bound by the conditions and limitations created by the contract."); *BAII Banking Corp. v. UPG, Inc.*, 985 F.2d 685, 697 (2d Cir. 1993) ("It would be contrary to justice or good sense to hold that a third-party beneficiary should acquire a better right against the promisor than the promisee [itself] had.").

Finally, because Walton and Maddison's claims accrued at the latest in 2014 and 2015—when they terminated their respective employments—and they did not commence this action until 2017, there is no question that their claims would be time-barred under a one-year limitation period.

For all these reasons, there is a reasonable probability that the Court of Appeals of New York would conclude, like the district court here, that Plaintiffs' claims are time-barred.

What makes this issue complicated is the recognition that New York courts do not appear to apply standard third-party beneficiary common law principles when assessing claims by workers to enforce their rights under § 220. At least some courts have held that the requirements of § 220 *trump* the intent of the contracting parties as to the availability of a contractual cause of action to vindicate the prevailing wage protection. If a public works contractor can't contractually *eliminate* the right to sue as a third-party beneficiary, can it contractually *limit* a worker's opportunity to exercise that right by shrinking the limitations period? Or, to ask the question with reference to the above caselaw, did the Second Department conclude that the contract provision requiring exhaustion of administrative remedies in *Singh* was unenforceable because it would have effectively *precluded* a third-party beneficiary contract claim, or because it would have limited the circumstances under which the worker could pursue such a claim? *See* 163 A.D.3d at 1025–26; *see also Wroble*, 166 A.D.3d at 521 ("This statute has as its entire aim the protection of [workers] against being induced, or obliged, to accept wages below the prevailing rate and must be construed with the liberality needed to carry out its beneficent purposes.").

Considering the above, there is also a reasonable probability the New York Court of Appeals would conclude a plaintiff's statutorily created contractual right

39

to bring a third-party beneficiary claim belongs to the plaintiff and, in contrast to an ordinary third-party beneficiary claim, cannot be compromised or limited by an agreement between the contractor and government agency without the plaintiff's consent.

## IV. Certification

The New York Court of Appeals authorizes us to certify claim-determinative questions of New York law where there is no controlling Court of Appeals precedent. 22 N.Y.C.R.R. § 500.27(a). Likewise, under our Local Rule 27.2, we may certify questions of New York law to the New York Court of Appeals. Among the factors that guide our exercise of discretion to certify, or not, are: (1) "whether the New York Court of Appeals has addressed the issue;" (2) "whether the question is of importance to the state and may require value judgments and public policy choices;" and (3) "whether the certified question is determinative of a claim before us." *Barenboim v. Starbucks Corp.*, 698 F.3d 104, 109 (2d Cir. 2012).

As detailed above, the New York Court of Appeals has not addressed the potentially dispositive questions here. And the Appellate Division precedent does not clarify the New York courts' position. For these reasons, we believe New York law "is so uncertain that we can make no reasonable prediction," and the prudent

path is to certify the question to the New York Court of Appeals. *RSD Leasing*, 81 F.4th at 169. Moreover, this question is "of importance to the state and may require value judgments and public policy choices." *Barenboim*, 698 F.3d at 109. Therefore, we certify the question to the New York Court of Appeals.

## CONCLUSION

Given the stakes at issue, we conclude the New York Court of Appeals should have the opportunity to decide the important and challenging question we have been called upon to answer. *See Barenboim*, 698 F.3d at 117–18. Pursuant to our Local Rule 27.2 and 22 N.Y.C.R.R. § 500.27(a), we hereby **CERTIFY** the following questions to the New York Court of Appeals:

> (1) Is the promise to pay prevailing wages implicit in every public works contract so that individuals employed on public works projects may sue their employers for breach of contract to enforce the prevailing wage requirement under NYLL § 220 even if the employer's written contract does not include the statutorily required promise to pay prevailing wages?

> (2) Are agreements to shorten the statute of limitations in public works contracts to one year enforceable against workers bringing third-party beneficiary breach of contract claims to enforce the prevailing wage law?

Consistent with our usual practice, we do not intend to limit the scope of the New York Court of Appeals' analysis through the formulation of our

questions, and we invite the Court of Appeals to expand upon or alter these questions as it deems appropriate. This panel will retain its jurisdiction.

It is therefore **ORDERED** that the Clerk of this Court transmit to the Clerk of the Court of Appeals of the State of New York a Certificate, as set forth below, together with a complete set of briefs and appendices, and the record filed in this Court by the parties.

## CERTIFICATE

The foregoing is hereby certified to the Court of Appeals of the State of New York pursuant to Second Circuit Local Rule 27.2 and New York Codes, Rules, and Regulations Title 22, section 500.27(a), as ordered by the United States Court of Appeals for the Second Circuit.